STATE v. NINESTEIN.

(Filed April 21, 1903.)

PEDDLERS—*Hawkers—Taxation—Itinerant   Merchants—Acts   (Private)*
    *1899, Ch. 186, Sec 54. Subsecs. 1 and 12.*

> A person selling watermelons in wholesale lots in the city of Salis-
>     bury, to be shipped from a nearby town, and only delivering to
>     those from whom he had taken orders, is not an itinerant mer-
>     chant or peddler.

INDICTMENT against A. H. Ninestein, heard by Judge
*Walter H. Neal* and a jury, at February Term, 1902, of the
Superior Court of ROWAN County. From a judgment of
guilty on a special verdict, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* and *Craige & Craige,*
for the State.
*L. H. Clement* and *Womack & Hayes,* for the defendant.

DOUGLAS, J.    This action was tried upon appeal from the
decision of the mayor of the city of Salisbury upon a warrant
charging the defendant with "engaging in the business of an
itinerant merchant and peddler, without first having paid the
license tax as required by law, in violation of the charter of
said city.

The jury, after being empanneled to try the issue in the
case, found the following special verdict:

1.    That Salisbury, in the County of Rowan, is a city duly
incorporated by the General Assembly of the State of North
Carolina.

2.    That the charter of the said city of Salisbury, Section
54, sub-sections 1 and 12, provides as follows:

(1)  "On all itinerant merchants or peddlers offering to
vend in said city, a privilege tax not exceeding fifty dollars a
year in addition to a tax not exceeding one per centum on the
amount of their purchases, respectively, and among such itin-

erant merchants or peddlers shall be included, also all itinerant venders of medicines or other articles."

(12)   "Said Board of Aldermen may require and provide for the payment in advance of any license tax or privilege tax in this act authorized, and any person who in such case shall engage in any business, trade, occupation, calling or profession upon, or for which in any manner any such tax is allowed to be imposed without having paid such tax, shall be guilty of a misdemeanor, and upon conviction shall be fined not more than fifty dollars or imprisoned not more than thirty days."

3.   That there is in the city of High Point, North Carolina, about .... miles from said city of Salisbury, a firm known as Ninestein & Jarratt, and the defendant in this case is the senior member of the said firm.

4.   That the said firm are wholesale dealers in produce, also in oranges, bananas, lemons, fruits, melons, etc., and sell only by wholesale.

5.   That the defendant herein, senior member as aforesaid, travels for said firm, going from town to town in this State as traveling salesman.

6.   On Monday, June 30th, 1902, the defendant came to Salisbury, and went to various merchants doing business in the said city, and offered to sell them watermelons in wholesale lots.

7.   That said Ninestein went to see no one except merchants and refused to sell to anybody else.

8.   That the defendant stated to said merchants that the melons were in High Point, in the wholesale house of Ninestein & Jarratt, and that defendant was selling for them, and that if they gave an order, that the melons would be delivered as soon as he could send in the several orders, and goods would be shipped by freight.

9.   That when the negotiations of sale were pending, the

purchasers stated to defendant that they would rather wait and see the fruit and melons, before buying. Defendant replied that he could not sell that way. That he would have to take their order and have it filled from High Point. That he would send the order by 'phone to High Point and have them loaded on afternoon freight.

10. That defendant took orders from C. J. Jeffress for fifty melons, D. M. Miller twenty-five, and from various other merchants orders, amounting to in the aggregate to 360 melons.

11. That the defendant sent the said orders to the house of Ninestein & Jarratt at High Point by 'phone.

12. That Ninestein & Jarratt shipped at once by freight to this defendant at Salisbury 360 melons, the way-bill being marked N. & J., consignor, consignee A. H. Ninestein.

13. The said melons were, by the railway, delivered to the defendant about 9 o'clock Tuesday morning, July 1st, 1902, and he employed one Julius Malone, a drayman in Salisbury, to assist him in the delivery of the melons. This defendant went around with the said Malone in the delivery of the melons to the various purchasers, said melons were delivered, and the defendant collected for some of the sales and the drayman for the others.

14. That no sale or delivery was made except to those firms from whom orders had been taken.

15. That the tax collector of the city of Salisbury demanded of the defendant the tax of $5 as a peddler, which the defendant refused to pay.

16. That he then demanded a tax of twenty-five dollars as itinerant merchant, and he refused to pay this tax.

17. That the Board of Aldermen, as they had the right at law to do, had fixed the tax of a peddler at $5 and of an itinerant merchant at $25.

18. That the defendant sold said melons in the manner aforesaid without having paid any tax.

If upon the foregoing facts the court should be of the opinion that the defendant is guilty, then the jury so find; but if the court should be of the opinion that the defendant is not guilty, then the jury find him not guilty. Upon the special verdict the defendant is adjudged guilty and that he pay a fine of $25 and costs."

We think that the defendant was entitled to a judgment of acquittal upon the special verdict. It is evident that the defendant was not an itinerant merchant or salesman as defined in *State v. Gibbs,* 115 N. C., 700. It is equally clear that he is not a peddler in the ordinary meaning of the word, which we are compelled to accept unless he comes within the statutory definition. In *State v. Lee,* 113 N. C., 681; 37 Am. St. Rep., 649, this court has defined peddling as "the occupation of an itinerant vender of goods who sells and delivers the identical goods he carries with him, and not the business of selling by sample and taking orders for goods to be thereafter delivered and to be paid for wholly or in part upon their subsequent delivery." This definition, approved in *State v. Franks,* 130 N. C., 724; 89 Am. St. Rep., 885, expressly excludes the defendant.

The only remaining question is whether he was a statutory peddler under the definition of the Revenue Act. Ordinarily the General Assembly has no power to construe an Act, but when it imposes a tax upon peddlers and in the same Act defines who are peddlers, it is equivalent to imposing a tax upon all persons engaged in the occupations therein specified. Section 54 of Chapter 9 of the Laws of 1901 declares that "any person carrying a wagon, cart or buggy for the purpose of exhibiting or delivering any wares or merchandise, shall be considered a peddler." But the same section expressly provides that: "This section shall not apply to those who sell or

offer for sale ice, fuel, fish, vegetables, fruits or any articles of the farm or dairy." This language is certainly broad enough to include watermelons. The judgment is reversed and the court below will enter a verdict of not guilty.

Reversed.