### STATE v. MOOREHEAD.

1. HAWKERS AND PEDDLERS—SEWING MACHINE AGENT.—The act of 1893, 21 Stat., 407, forbids sales by hawkers and peddlers without license, and declares "that the provisions of this act shall not extend to vendors of newspapers, magazines, vegetables, tobacco, provisions of any kind, or agricultural products, or to sales by sample by persons traveling for established commercial houses, but shall extend and apply to vendors of every other class and kind of goods, wares, and merchandise, and to sales by sample or otherwise by such hawkers and peddlers of stoves, ranges, clocks, lightning rods, sewing machines, pianos, or organs." *Held,* that the sale of a sewing machine without license was prohibited only to hawkers and peddlers, and that a traveling salesman of an established agency in this State for the sale of such machines, who solicited orders, sold by sample, and sometimes sold the sample itself, was not a hawker or peddler within the meaning of this statute.[1]  MR. JUSTICE GARY *dissenting.*

2. *Per* JUSTICE GARY.  This act is not unconstitutional.

Before FRASER, J., Richland, March, 1894.

I. H. Moorehead was tried and convicted before a trial justice for selling a sewing machine as a hawker and peddler without license so to do.  On appeal to the Circuit Court, the judgment of the trial justice was affirmed, and defendant then appealed to this court.

*Messrs. Andrew Crawford* and *Barron & Ray,* for appellant.

*Mr. John P. Thomas, jr.,* contra.

December 15, 1894.  The opinion of the court was delivered by

<hr>

[1] See 14 L. R. A., 529, note, and 719, and 24 *Id.,* 289, note.

MR. CHIEF JUSTICE MCIVER. The defendant has been indicted for, and convicted of, a violation of the act of 1893, entitled, "An act to amend the law as to hawkers and peddlers" (21 Stat., 407); and this appeal presents two questions: 1st. Whether the defendant is a hawker and peddler, and as such amenable to the provisions of said act. 2d. If so, whether the act is constitutional.

We do not understand that the act of 1893 purports either to define the long established offence of hawking and peddling, or to enlarge its definition, as heretofore recognized, but simply declares, in its first section, that "no person shall, as hawker or peddler, expose for sale, or sell, any goods, wares, or merchandise," without a license; in its second section, the act prescribes who shall issue the required license, and other particulars as to such license; in the third section, certain public officers are required, and any citizen is authorized, to demand and inspect the license of any hawker or peddler, and cause to be arrested, any hawker or peddler found without a license, and have him brought to justice; the provisions of the fourth section, upon which the first question in this case mainly turns, are as follows: "That the provisions of this act shall not extend to vendors of newspapers, magazines, vegetables, tobacco, provisions of any kind, or agricultural products, or to sales by sample by persons traveling for established commercial houses; but shall extend and apply to vendors of every other class and kind of goods, wares, and merchandise, and to sales by sample or otherwise, by such hawkers and peddlers of stoves, ranges, clocks, lightning rods, sewing machines, pianos or organs. The other provisions of the act, not being pertinent to our present inquiry, need not be stated.

From this brief review of the provisions of the act, it seems to us that there is nothing in the act to indicate any intention on the part of the legislature to give any new definition of the words "hawkers and peddlers," but the sole purpose was to regulate the granting of licenses to persons falling within the well recognized definition of those words; to declare what classes of goods might, and what might not, be sold by *such persons;* and to prescribe the penalties for violat-

ing the provisions of the act. Thus, by the express provisions of section four, *any* person, even though he may be a hawker and peddler, may, with impunity, sell newspapers, magazines, vegetables, tobacco, provisions of any kind, or agricultural products, or may sell, by sample, if traveling for an established commercial house; but a sale *by a hawker or peddler* of every other class of goods, wares, and merchandise, or a sale, by sample or otherwise, of stoves, ranges, clocks, lightning rods, sewing machines, pianos or organs, is expressly forbidden. It will be observed that in the permissive clause of this section, *any* person may sell the classes of articles there specified, viz: newspapers, &c., but in the prohibitory clause of the section, the language used is not so general, but, on the contrary, the prohibition is confined to a particular class of persons, as is plainly shown by the use of the words, "by such hawkers and peddlers." Hence, in order to render one amenable to the penal provisions of the act, it must be shown, not only that he has sold one prohibited article, but, also, that such sale was made by him as a hawker or peddler. Any other view would subject any citizen, who sells to his neighbor a sewing machine, a clock, or a piano, to the penalties of this act, and this, surely, was not the intention of the legislature.

Such being our construction of the law, the only remaining inquiry is whether the conceded facts of this case are sufficient to bring the appellant within the provisions of the act.

The facts are stated in the case as follows: "On and prior to the 29th day of March, 1894, defendant, who is a resident of Richland County, was in the employment of the Singer Manufacturing Co., a corporation organized under the laws of the State of New Jersey, and doing business in the State of South Carolina, as well as in other States. Said corporation has a place of business, storerooms, and warehouses in the city of Columbia, South Carolina, to which place they ship sewing machines, parts, and attachments, needles, and thread, which are kept on sale at said store in the city of Columbia, for any customer who desires to purchase any of said articles there, and are sold at said store in the usual course of business, and said company pays its taxes on its business and property in the city

of Columbia, as do other commercial houses, to the State, the county of Richland, and the city of Columbia. The defendant, on and prior to said 29th day of March, 1894, was employed by said company, and by it furnished with a wagon in order to travel about from place to place in Richland County and elsewhere, for the purpose of selling sewing machines, parts, and attachments, and for the purpose of soliciting patronage for the business and store of said company at Columbia, S. C. * * * The defendant has, since the 20th of December, 1893, to wit: on the 29th day of March, 1894, sold a sewing machine from his wagon, while traveling from place to place, said sale having been made to one John Smith, in Richland County, * * * The said sewing machine, so sold by defendant from his wagon as aforesaid, was shipped by said company from its store and warehouse at Columbia. As a rule, in the conduct of defenddant's business as employee and salesman of said company, he carries about with him but one machine, which he exhibits to people residing in the county through which he travels. Sometimes, as upon the occasion above mentioned, defendant sells the machine from his wagon as he is traveling from place to place, and in that event he is supplied with another by said company from its storerooms and warehouse in the city of Columbia. And sometimes defendant secures orders for other machines, using the machine upon his wagon as a sample; such orders so received are supplied and furnished by the company from its stores and warehouse in said city of Columbia.

Now, while these facts do unquestionably show that a sewing machine was sold by the defendant at the time and place charged, yet we are of opinion that they entirely fail to show that such sale was made by him as a hawker or peddler. We do not think that the testimony brings the defendant within any recognized definition of the terms hawker and peddler, for which see 9 Am. & Eng. Enc. Law, 307–8; *State* v. *Belcher*, 1 McMull., 40. See, also, *City of Davenport* v. *Rice*, 75 Iowa, 74, reported, also, in 9 Am. St. Rep., 454, and *Commonwealth* v. *Farnum*, 114 Mass., 267. This Massachusetts case was very much like the case under consideration. There the court, after stating the facts, used this language: "Upon these facts, we

think the jury should have been instructed that the defendant was not liable. He was an agent soliciting orders, and a carrier delivering machines ordered. He made no direct sale himself. He did not carry and expose goods for sale, within the meaning of the statute, and his acts did not come within the mischief the statute is intended to prevent. The article he carried was a sample of that which he proposes the purchaser should buy of the company. The fact that he occasionally delivered the sample machine to a purchaser, desirous of obtaining one immediately, cannot so change the character of his business as to bring him within the statute. Nor did the fact that he sold one attachment, and one tuckmarker, capable of being attached, render him liable; it distinctly appearing that it was not his practice to make such sales. The question is to be determined upon the general character and scope of his business; if this does not bring him within the statute, he is not liable for single sales of particular articles, such sales being exceptional and not in the course of his ordinary employment."

It seems to us that the defendant was nothing more than the clerk or salesman of the Singer Manufacturing Company, a foreign corporation, which had an established place of business in the city of Columbia, South Carolina, where it paid its taxes, State, county, and city, on its business and property in the city of Columbia, and its agent or salesman cannot, in any proper sense, be regarded as a hawker or peddler.

Under this view of the case, the question as to the constitutionality of the act of 1893 does not necessarily arise, and, therefore, we do not feel called upon to express any opinion as to that question.

The judgment of this court is, that the judgment of the Circuit Court be reversed.


MR. JUSTICE GARY, *dissenting.* Being unable to concur in the conclusions reached by a majority of the court, I proceed to give the reasons for my dissent.

The exceptions complain of error on the part of the court below on two grounds: 1st. In holding that the defendant is

amenable to the provisions of the hawkers and peddlers act. 2d. In holding that the act is constitutional.

We will first consider whether the defendant is amenable to the provisions of said act.

The act, it is true, is somewhat *inartistically* drawn, but when construed as a *whole*, and in the light of the evils it was intended to remedy, the intention of the legislature is apparent. The first, second, third, and fourth sections of the act are as follows: *Section 1.* "That on and after the passage of this act, no person shall, as hawker or peddler, expose for sale or sell any goods, wares or merchandise in any county in this State, unless he has received and is ready to produce and exhibit a license from the clerk of the Court of Common Pleas of such county, so to sell or expose for sale goods, wares, and merchandise in said county. *Section 2.* That said clerk shall issue licenses to hawkers and peddlers, to be good in his county until the last day of December next after the date of its issue, upon receiving from the applicant such fee or fees therefor as the county commissioners shall, at their first meeting in January after the passage of this act, and thereafter at their first meeting in January of every year, establish and fix license fees for hawkers and peddlers in their county; and it shall be the duty of the county commissioners to fix and establish the said license fees in the several counties of this State. And each license shall specify the sum paid therefor and the privileges granted thereby. *Section 3.* It shall be the duty of every trial justice and every constable and of the sheriff and of his regular deputies to, and every citizen may, demand and inspect the license of any hawker or peddler in his or their county who shall come under the notice of any of said officers, and to arrest or cause to be arrested any hawker or peddler found without a valid license, and to bring such hawker or peddler before the nearest trial justice, to be dealt with according to this act. *Section 4.* That the provisions of this act shall not extend to vendors of newspapers, magazines, vegetables, tobacco, provisions of any kind, or agricultural products, or to sales by sample by persons traveling for established commercial houses, but shall extend and apply to vendors of every other class and kind of goods, wares, and merchandise,

and to sales by sample or otherwise by such hawkers and peddlers of stoves, ranges, clocks, lightning rods, sewing machines, pianos or organs." *Section 5* simply provides a punishment for persons or officers violating the provisions of the act. *Section 6* repeals all acts inconsistent with this act.

The following facts appear in the case: "On and prior to the 29th day of March, 1894, defendant, who is a resident of Richland County, was in the employment of the Singer Manufacturing Co., a corporation organized under the laws of the State of New Jersey, and doing business in the State of South Carolina, as well as in other States. Said corporation has a place of business, storeroom, and warehouse in the city of Columbia, S. C., to which place they ship sewing machines, parts, attachments, needles, and thread, which are kept on sale at said store in the city of Columbia for any customers who desire to purchase any of said articles there, and are sold at said store to customers in the usual course of business, and said company pays its taxes on its business and property in the city of Columbia. The defendant, on and prior to said 29th day of March, 1894, was employed by said company, and by it furnished with a wagon, in order to travel about from place to place in Richland County and elsewhere for the purpose of selling sewing machines, parts, and attachments, and for the purpose of soliciting patronage for the business and store of said company at Columbia, S. C. * * * The defendant has since the 20th of December, 1893, to wit: on the 29th day of March, 1894, sold a sewing machine from his wagon while traveling from place to place, said sale having been made to one John Smith in Richland County. * * * The said sewing machine so sold by defendant from his wagon as aforesaid, was shipped by said company from its store and warehouse at Columbia."

The words, "and to sales by sample or otherwise by such hawkers and peddlers of stoves, ranges, clocks, lightning rods, sewing machines, pianos or organs," at the end of section 4, were not in the bill as at first introduced, but were inserted as an amendment upon the recommendation of the Senate Committee. See Senate Journal of 1893, page 154.

We will first consider the act without the aforesaid amend-

ment. There can be no doubt that it was the intention of the
legislature that the provisions of the act should not extend to
vendors of newspapers, magazines, vegetables, tobacco, provi-
sions of any kind, or agricultural products, or to sales by sam-
ple by persons traveling for established commercial houses, but
should extend and apply to vendors of every other class or kind
of goods, wares, and merchandise. Under the provisions of the
act, without the amendment, a person traveling for an estab-
lished commercial house would have the right to sell a sewing
machine by *sample*, but only by *sample*.

What was the intention of the legislature by amending sec-
tion 4 as aforesaid? According to the view which I take of the
amendment, it was for the purpose of emphasizing the restrict-
ive provisions of the act as to sales of stoves, ranges, clocks,
lightning rods, sewing machines, pianos or organs," and to
prevent their sale by "*sample* or *otherwise*" by the persons men-
tioned in the act, unless the person selling them had a license
authorizing such sale. The connection in which the legislature
uses the words, "such hawkers and peddlers," in section 4,
leads me to the conclusion that their intention was to use them
in the sense of "persons traveling for established commercial
houses." It will scarcely be contended by those who are famil-
iar with the sales of "stoves, ranges, clocks, lightning rods,
sewing machines, pianos or organs," that it was the intention
of the legislature to confer *special privileges* on those making
such sales, or that the amendment was adopted for the purpose
of enabling persons traveling for established commercial houses
"to sell stoves, ranges, clocks, lightning rods, sewing machines,
pianos or organs," not only by *sample* but *otherwise*, while such
persons can sell other articles only by *sample;* yet this is the
effect of the construction placed upon the act by the majority
of the court. Such construction almost practically defeats the
purposes of the act by exempting from its operation sales of
sewing machines, &c. (mentioned in the amendment), conducted
in the manner set forth in this case.

We will next consider the error complained of on the part
of the court below, in holding the act constitutional. Objection
is urged against the constitutionality of the act, because it

2  provides that "it shall be the duty of the county com-
missioners to fix and establish the said license fees in
the several counties of this State" (section 2). Section 8 of
Art. IX. of the Constitution of this State is as follows: "The
corporate authorities of counties, townships, school districts,
cities, towns, and villages may be vested with power to assess
and collect taxes for corporate purposes, such tax to be uniform
in respect to persons and property within the jurisdiction of
the body imposing the same." Section 643 of the Revised
Statutes of 1893,[1] relative to county commissioners, is as fol-
lows: "They shall have jurisdiction over roads, highways, fer-
ries, and bridges, and all matters relating to taxes and disburse-
ments of money for county purposes, in accordance with
provisions of law, *and in every other case that may be neces-
sary to the internal improvement and local concern in their
respective counties.*" Section 1444 of the Revised Statutes of
1893,[1] provides that such license fees shall be paid by the clerk
of the court into the hands of the county treasurer for the use
of the county. In the case of *State* v. *Columbia,* 6 S. C., 1, it
was decided that a requirement of the payment of license fees
for the exercise of an employment or calling is an exercise of
the *taxing* power. The tax assessed by the county commission-
ers was for "the use of the county," and, therefore, for a "cor-
porate purpose."

It is argued, however, that in section 2 of said act, the legis-
lature attempted to delegate its powers of taxation to the county
commissioners, and that, therefore, the act is null and void.
We cannot accept this view of the act. It is full and complete
within itself, only leaving it to the county commissioners to
assess and fix the amount of the license, which, when this
is done, is definite and uniform as to all persons within that
county. It comes under the principle laid down in the case of
*Port Royal Mining Co.* v. *Hagood,* 30 S. C., 524, in which it is
said: "It is undoubtedly true that legislative power cannot be
delegated, but it is not always easy to say what is, and what
is not, legislative power in the sense of the principle. The
legislature is only in session for a short period of each year,

---

[1] As reported by the codifiers to the legislature in November, 1893.—REPORTER.

and during the recess cannot attend to what might be called
the business affairs of the State. From the necessity of the
case, as well as the character of the business itself, that must
be performed by agents appointed for that purpose—such as
the railroad commission, regents of the lunatic asylum, the
State board of canvassers of elections, sinking fund commission,
&c. The numerous authorities cited in the argument, show
conclusively that while it is necessary that the law should be
full and complete, as it comes from the proper law-making
body, it may be—indeed, must be—left to agents in one form or
another, to perform acts of executive administration, which
are in no sense legislative. Without encumbering this opinion
with the authorities, we think the view is well stated in *Locke's
Appeal*, 72 Pa. St., 491. Then the true distinction, I conceive,
is this: the legislature cannot delegate its power to make a law,
but it can make a law to delegate a power to determine some
fact or state of things upon which the law makes, or intends
to make, its non-action depend. To deny this would be to
stop the wheels of government. There are many things upon
which wise and useful legislation must depend, which can not
be known to the law-making power, and must, therefore, be a
subject of inquiry and determination outside of the halls of
legislation." This view is also sustained by *Information* v.
*Oliver*, 21 S. C., 325, which says: "In the case of State against
Columbia, 6 S. C., 1, it was held that the legislature is not
forbidden by the Constitution from empowering municipal
corporations to enforce taxes on business and avocations, and
to fix a different rate for each distinct class of persons subject
to the tax. That whatever in this regard the State herself
could do, she might authorize a municipal corporation to do
within its limits."

Section 8 of art. IX. of the Constitution, which confers the
right to vest such power in municipal corporations, likewise
mentions in the same connection the corporate authorities of
counties. The county commissioners are the corporate auth"
ities of counties. The duties imposed upon the clerk of the
court are purely ministerial. The requirement that he should
specify in the license the privileges granted thereby, was not

to confer upon him the power to grant privileges, but simply to specify what articles the hawker or peddler was allowed to sell, for what length of time, and within what territory. The objection that the law is not certain and uniform, cannot be sustained. It was the intention of the act that the license fees should be established and fixed by the county commissioners at their first meeting in January after the passage of the act, and should be certain and uniform as to all persons within the county. Although the license fees might be different in the several counties, this would not render the act unconstitutional. The law applicable to this case is expressed in *State* v. *Berlin*, 21 S. C., 295, in which the court says: "It seems to us that the rule upon this subject has been well expressed by Judge Cooley in his work on Constitutional Limitations (2d edit.), at page 390: 'Laws public in their objects may, unless express constitutional provision forbids, be either general or local in their application * * * The authority that legislates for the State at large, must determine whether particular rules shall extend to the whole State and all its citizens, or, on the other hand, to a subdivision of the State or a single class of its citizens only. The circumstances of a particular locality, or the prevailing public sentiment in that section of the State, may require, or make acceptable, different police regulations from those demanded in another * * * The legislature may, therefore, prescribe different laws of police * * * in each distinct municipality, provided the State Constitution does not forbid. These discriminations are made constantly, and the fact that the laws are of local or special operation only, is not supposed to render them obnoxious in principle * * * If the laws be otherwise unobjectionable, all that can be required in these cases is, that they be general in their application to the class or locality in which they apply; and they are then public in character, and of their propriety and policy the legislature must judge.' The whole matter is well summed up in a note on the same page in the following words: 'To make a statute a public law of general obligation, it is not necessary that it should be equally applicable to all parts of the State;

all that is required is, that it shall apply equally to all persons within the territorial limits described in the act.' "

Objection is also urged against the constitutionality of the act, on the ground that it is an interference with interstate commerce. In considering this objection it will be well to bear in mind the following facts in this case: The defendant is a resident of Richland County; the company had a place of business in the city of Columbia, where machines were kept on sale for any customers who might desire to purchase them; they were sold in the usual course of business; the company also pays its taxes on its business and property in the city of Columbia, as do other commercial houses, to the State of South Carolina, county of Richland, and city of Columbia; the machine was sold from the wagon, while the defendant was traveling from place to place in Richland County, which machine was furnished by the company from its store in Columbia. The goods in Columbia had become part of the general mass of property in this State, and were, therefore, amenable to the laws of the State. It is not contended that the goods were sold in the original package. Under these circumstances the act cannot be declared unconstitutional as interfering with interstate commerce. The case of *Robbins* v. *Shelby County Taxing District,* 120 U. S., 489, decides that the Constitution of the United States does not prohibit the "imposition of taxes upon persons residing within the State or belonging to its population, and upon avocations and employments pursued therein, not directly connected with foreign or interstate commerce." Also, "as soon as the goods are in the State, and become part of the general mass of property, they will become liable to be taxed as other property of similar character."