### PLYMOUTH v. COOPER.

(Filed April 12, 1904).

ORDINANCES — *Municipal Corporations—Licenses—Livery Stables—
The Code, sec. 3800—Const. N. C., Art. V, sec. 3.*

> An ordinance requiring a license of livery-men, and providing that
> it shall include any persons making contract for hire in town,
> "or carry any person with a vehicle out of the town for hire,"
> is not only void as being unreasonable, but is unlawful as well.

MONTGOMERY, J., dissenting.

ACTION by the Town of Plymouth against W. D. Cooper,
heard by *Judge W. B. Council,* at Fall Term, 1903, of the
Superior Court of WASHINGTON County.

This action comes up on a special verdict, of which the
following are the material parts:

That on July 20, 1903, and for many years prior thereto,
the defendant was and had been and still is a resident of
Roper, N. C., a village nine miles from Plymouth, N. C.

That said defendant was on said July 20, 1903, engaged in livery business at Roper, N. C., having obtained from the county and State the license required by law.

That several days prior to July 20, 1903, the defendant, while at Roper, N. C., received a letter from Charles Balfour, a traveling salesman for J. H. LeRoy Co., Elizabeth City, N. C., asking defendant to meet him at Plymouth, N. C., and convey him to Roper and thence to Creswell and Columbia on said 20th July, which the defendant wrote him he would do, and did do so, charging the said Balfour for said services his customary price.

That on June 1, 1903, the commissioners of Plymouth passed the following ordinance, among others, in reference to taxation:

"On livery stables and persons keeping a horse or horses for hire, or doing any livery business or hiring of horses in the town, $7.50. This shall include any persons making contract for hire in town or carrying any person with a vehicle out of the town for hire."

This ordinance was in force on July 20, 1903, if said commissioners had authority under the law to pass it.

The defendant has never paid said tax.

Under the instruction of the Court the jury thereupon returned a verdict of guilty, and the defendant was fined $25 in accordance with the ordinance.

*Robert D. Gilmer, Attorney-General,* and *Bragaw & Ward,* for the State.

*A. O. Gaylord,* for the defendant.

DOUGLAS, J., after stating the case. We are of opinion that upon the special verdict the defendant was entitled to a judgment of not guilty, inasmuch as the town commissioners did not have the power to pass the ordinance, and that the

ordinance is unreasonable.  We refer to that part of the
ordinance under which the defendant is convicted and which
includes among those taxed for the privilege of doing a
livery business "any person carrying any person with a
vehicle out of the town for hire."  This is the only ques-
tion before us.  It is found that the defendant is a resident
of the village of Roper, N. C., where he is carrying on the
livery business, having paid both the State and county tax.
There is no allegation that he is carrying on the livery *busi-
ness* at Plymouth, or that he is in the habit of taking people
out of Plymouth.  As far as we can see, this is his first pas-
senger and he was carrying him under a contract made at
Roper, or at Elizabeth City, certainly while neither of the
parties were at Plymouth.  It seems there is no harm in
taking people into Plymouth in a vehicle, provided you put
them out and leave them there.  People may pay a man to
bring them into town but must walk home unless they con-
clude to make the town their permanent residence, or can
get some local inhabitant to take them away.  This may
sound like a *reductio ad absurdum,* but it is a plain state-
ment of the possible operation of the ordinance if sustained
and carried to its legitimate result.  Suppose a man living in
Roper were compelled to visit Plymouth for an hour or two
on some business.  He could hire the defendant to carry him
into the town, but he could not return by the same vehicle.
Again, a man might hire a conveyance to take him from
Roper to some place beyond Plymouth.  If Plymouth lay
directly in the way he would have to go out of his way to
drive around the town, or get out and hire a Plymouth man
to take him the rest of the way.  Surely the Legislature
never intended any such result, nor should the Courts place
such a construction upon the law as to legalize such action.
It would require a livery-man, who had paid all the taxes

at his home, to pay an additional tax in every town to which he happened to send a vehicle, even if only once a year.

The ordinance is not only unreasonable but, in our opinion, is clearly unlawful. The question of the general power of the town to tax trades, occupations, and professions is not before us; and we therefore confine ourselves to that part of the ordinance under which the defendant was convicted.

It seems to be assumed in behalf of the town that the numerous class of cases holding invalid certain forms of municipal taxation have in some way been done away with by the change in the law. We do not so understand it. The principle of those cases remains in full force to the effect that "the authorities of a town can impose no taxes except as authorized by its charter or general laws applicable thereto. Section 3800 of The Code says nothing to the contrary, but simply specifies what may be taxed. It says "they may also lay taxes for municipal purposes on all persons, property, privileges and subjects within the corporate limits, which are liable to taxation for State and county purposes." This section requires two prerequisites: the subject of taxation must be within the corporate limits, and must be identically liable to State and county taxes. Is the act of "carrying any person with a vehicle out of the town (of Plymouth) for hire," liable to State and county taxes? If not, then it is not liable to town taxes. It is evident that the permissive taxation extends only to a trade, profession or ordinary occupation, and not to a single act. It is intended to comply with Article V, section 3, of the Constitution, which reads in part as follows: "The General Assembly may also tax trades, professions, franchises and incomes."

We are referred to the reasoning in *Winston v. Taylor,* 99 N. C., 210, but we must not overlook the facts of that case. There the jury found that the defendants "made a business of purchasing their stock of leaf on the floors of the tobacco

warehouses in the town of Winston and carrying the same on drays to their factory in Salem," and that "they attended the auction sales of leaf tobacco *regularly* for the purpose above indicated." If the defendant had made a business of sending his hacks regularly into the town of Plymouth the case would be different, but there is neither evidence nor suggestion of such a fact.

Neither a municipal corporation nor even the Legislature can change the meaning of words so as to make that a crime which would not be a crime if called by its proper name. In the case at bar, the town could tax the livery business and could define the business, provided it did not carry the definition beyond the limits of its taxing power. When it said that the livery business should include the single act of carrying a passenger out of town for hire, it simply said in legal effect that such an act should be taxed to the same extent as the livery business. If the town had the right to tax that single act, then the ordinance was valid; but calling that single act a *business* did not make it so, nor did it create the right to tax where it did not already exist. This is clearly laid down in *State v. Ninestein,* 132 N. C., 1039, where the Court says, on page 1042: "Ordinarily the General Assembly has no power to construe an act, but when it imposes a tax upon peddlers and in the same act defines who are peddlers, it is equivalent to imposing a tax upon all persons engaged in the occupations therein specified." In that case the definition was legal because the State had the right to tax the occupations it construed to be peddling. But suppose the act had declared that all foreign drummers should be peddlers and should be taxed accordingly, it would not have made them peddlers, nor would it have legalized their taxation. The power of taxation cannot rest upon legal fictions or irrebutable presumptions. Moreover, all municipal powers are strictly construed, and especially those relating to

taxation. In *Latta v. Williams,* 87 N. C., 126, *Ashe, J.,* speaking for the Court, says:

"In the construction of municipal powers, it is held to be a general rule that the powers of a municipal corporation are to be construed with strictness, and *Judge Cooley* in his work on taxation (page 387) says this rule is peculiarly applicable to taxes on occupations. 'It is presumed,' he adds, 'the Legislature has granted in plain terms all it has intended to grant at all. If it is not manifest that there has been a purpose by the Legislature to give authority for collecting a revenue by taxes on specified occupations, any exaction for that purpose will be illegal.' "

We think that upon the special verdict the defendant is entitled to a judgment of not guilty.

Reversed.

MONTGOMERY, J., dissenting. For a violation of an ordinance of the town of Plymouth the defendant was convicted in the Mayor's court, sentenced to pay the fine imposed by the ordinance, and appealed to the Superior Court of Washington County. In that Court the jury rendered a special verdict, the material facts found being as follows: That on June 1, 1903, the town commissioners passed an ordinance as follows: "On livery stables and persons keeping a horse or horses for hire, or doing any livery business or hiring of horses in the town, $7.50. This shall include any person making contracts for hire in the town, or carrying any person with a vehicle out of the town for hire." That the defendant was a resident on July 20, 1903, of Roper, N. C., a village nine miles from Plymouth, and was engaged in the livery business at that time at Roper, having obtained license from the county and State to engage in the business, and that the  defendant received a letter at Roper from a Mr. Balfour, posted at Elizabeth City, in which letter the

defendant was asked to meet Balfour at Plymouth and convey him thence to Roper and thence to other places, which the defendant did, making his customary charge for such service. Judgment of guilty was rendered upon the verdict, and the defendant appealed.

The defendant, in this Court, through his counsel, rested his defense on the grounds, first, that the town commissioners did not have the power to pass the ordinance; and second, that it was unreasonable and oppressive. Under the first line of defense the contention was that in the articles of incorporation of Plymouth, chapter 213 of the Private Laws of 1903, there was no specific power granted to the town to levy such a privilege tax as that mentioned in the ordinance, and that as that power was not specifically granted in the charter, the act of the commissioners in enacting the ordinance was *ultra vires,* and therefore null and void. And numerous cases, like *Pullen v. Raleigh,* 68 N. C., 451, and *Latta v. Williams,* 87 N. C., 126, were cited in support of the position. But at the time those decisions were made, the power to levy such a tax as that imposed by the ordinance was not authorized by the general law, as it was when the commissioners in the case before us passed the ordinance. In the last-mentioned case *Judge Ashe,* for the Court, said: "The construction we have given to the charter of the town of Davidson College is in consonance with the policy of the Legislature in regard to powers of taxation by municipal corporations, as indicated in the act entitled 'Towns,' Bat. Rev., ch. 111, sec. 16. There it declares that towns may levy a tax on real estate situated within the corporation, on such polls as are taxed by the General Assembly for public purposes, on all persons (apothecaries and druggists excepted) retailing or selling liquors or wines of the measure of a quart or less a tax not exceeding $25, on all such shows and exhibitions for reward as

are taxed by the General Assembly, on all dogs and on swine, horses and cattle running at large within the town. There is nothing in the act to authorize the right to tax trades or occupations, and when the Legislature has refrained from granting such power in a general law, it would not be reasonable to presume, in the absence of any express declaration to that effect, it intended to do so when it was granting special power of taxation." Section 16 of chapter 111 of Battle's Revisal, was brought forward in The Code, and with an addition thereto, made by the Code Commissioners, is now section 3800 of The Code, and that addition made by the Code Commissioners confers on the town authorities the power to levy such privilege taxes. The language is: "They may also lay taxes for municipal purposes on all persons, property, privileges and subjects within the corporate limits, which are liable to taxation for State and county purposes." Under Schedule B of the Revenue Act of 1903 the imposition of a license tax on the livery business was provided for; and besides, in the act of incorporation of the town of Plymouth, chapter 213 of Private Acts of 1903, by section 10, it is specially declared that section 3800 of The Code shall apply to the town of Plymouth.

In *Guano Co. v. Tarboro,* 126 N. C., 68, and *State v. Irvin,* 126 N. C., 989, this Court has held that under section 3800 of The Code, although such a power may not exist in the subjects of taxation enumerated in their charters, towns and cities may tax trades and professions and other privileges.

The second ground of defense, that is, that the tax is void on the ground that it is unjust, oppressive and unreasonable, cannot be maintained. The fact that the defendant is a non-resident of Plymouth cannot, in my opinion, relieve him from liability to pay the tax prescribed by the ordinance if he undertakes to do the livery business in Plymouth by carrying passengers out of the town. If so, he might

keep his vehicles and stables just outside the town limits and thereby escape the privilege tax, as well as by competition injure or destroy the business of other livery-men who live inside the town and pay the tax. "The Legislature may authorize municipal corporations to impose taxes upon persons whose ordinary avocations are pursued within the corporate limits, although residing beyond those limits, the same as upon residents." 2 Dillon Mun. Corp. (4 Ed.), sec. 791. And the same principle is decided in *City of Memphis v. Battaile & Co.,* 55 Tenn., 524, 24 Am. Rep., 285. In *Winston v. Taylor,* 99 N. C., 210, *Judge Davis,* for the Court, in illustrating the decision in that case, said: "If a livery-man or drayman resident in Greensboro should send his omnibus and hacks or drays into the town of Winston, and claim and be allowed the privilege of doing business there without the payment of taxes because he was a nonresident, it would be deemed a very unjust discrimination by the resident livery-men and draymen"; and we adopt his reasoning on that point in the case before us.