# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## White Oak Coal Co. v. City of Manchester.

### June 10, 1909.

#### Absent, Cardwell, J.   ·

1. Highways—*Public Use—Streets—Legislative Control—Delegation of Control.*—The highways of the Commonwealth, whether urban or rural, belong primarily to the public, and the legislature has absolute dominion over them, and while the control of streets is commonly delegated to the municipalities in which they are located in such measure as the legislature sees fit to bestow, still the use of them remains in the public at large subject only to such limitations as the municipalities are authorized by law to impose.

2. Municipal Corporations—*Streets—License Tax on Vehicles—Rights of Non-Residents.*—It is a reasonable exercise of charter powers to license vehicles for a municipality to lay a license tax upon vehicles of residents thereof and upon persons residing outside of the corporate limits who employ their vehicles in furtherance of business and occupations carried on within the municipality, but to levy such tax on vehicles of non-residents, whose business or pleasure casually carries them into or though the municipality, would be in derogation of their reserved right to use the highways of the Commonwealth, and impose intolerable conditions upon the public, and lead to absurd results.

3. Municipal Corporations — *Control of Streets — Construction of Grant.*—The grant by the legislature of municipal control over streets must be strictly construed in the interest of common right.

4. Municipal Corporations—*Streets—License Tax on Vehicles—Non-Residents—Use of Streets—City of Manchester—Case at Bar.*— The sporadic act of hauling a single consignment of coal by a non-resident coal company from a railroad siding in the city of Manchester, over the streets of the city, to a customer out-

side, is not carrying on such a business or occupation within the city as would subject the coal company to the license tax on vehicles imposed by the ordinance of the city.

Error to a judgment of the Corporation Court of the city of Manchester, affirming, on appeal, a judgment of the Mayor of said city, imposing upon the plaintiff in error a fine of $10 and costs for employing wagons on the streets of said city without having first obtained a license therefor.

*Reversed.*

The opinion states the case.

*Page & Leary,* for the plaintiff in error.

*Charles L. Page,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

The plaintiff in error, the White Oak Coal Company, is a corporation rengaged in business as a coal merchant at the city of Richmond, with its yards, offices and stables located in that city, where it pays a license tax on the wagons employed in its business. Having sold a consignment of coal to a customer in Chesterfield county, it caused the cars containing the coal to be stopped on a siding of the railroad company in the city of Manchester, and from that point proceeded to haul the coal in its wagons over the streets of the city to the place of business of the purchaser outside the city limits.

The charter of the city provides that "The council may grant or refuse licenses to owners or keepers of wagons, drays * * * and other wheel carriages kept or employed in the city for hire, and may require the owners and keepers of wagons, drays and carts, using them in the city, to take out a license therefor, and may require taxes to be paid thereon, and subject the same to

such regulations as they may deem proper, and prescribe fees and compensation."

The ordinance passed in pursuance of the foregoing provision declares, that "No wagon, dray * * * or other wheel carriage shall be kept or employed in the city for hire, directly or indirectly, unless the owner or keeper thereof obtain a license therefor."

Upon the foregoing state of facts the plaintiff in error controverts the contention that the city had authority to impose a license tax on its wagons.

The general principle is well recognized, that the highways of the Commonwealth, whether urban or rural, belong primarily to the public; and that the absolute dominion over them is lodged in the legislature. It is true the control of streets is commonly delegated to the municipalities in which they are located, in such measure as the legislature sees fit to bestow. Nevertheless, the use of them remains in the public at large, subject only to such limitations as the municipalities are authorized by law to impose. *City of Richmond* v. *Smith,* 101 Va. 161, 43 S. E. 345; Elliott on Roads and Streets (2nd ed.), section 645. Moreover, it is the policy of the State that each locality shall bear the burden of maintaining its own highways.

Bearing in mind these principles, it is generally regarded as a reasonable exercise of such charter powers to lay a license tax upon vehicles of residents of the municipality, and upon persons residing outside of the corporate limits who employ their vehicles in furtherance of business and occupations carried on within the city. But to levy such tax on vehicles of non-residents, whose business or pleasure casually carries them into or through the city, would be in derogation of their reserved right to use the highways of the Commonwealth and impose intolerable conditions upon the public, and lead to absurd results.

As corollary to these well settled rules, the grant by the legislature of municipal control over streets must be construed strictly in the interest of common right.

In *Bennett* v. *Birmingham,* 31 Pa. St. 15, discussing the power of cities to demand such exactions, the court says: "Such statutes and ordinances are contrary to the usual course of taxation, and embarrassing to the public, and ought to be strictly construed." In that case, by act of the legislature, the town council of Birmingham "were authorized to direct all owners of carts, wagons and other vehicles using the paved streets of said borough, to pay such moderate license for such use as they might by ordinance direct." The court held that this grant of power did not authorize the imposition of a tax on vehicles owned by non-residents and used in hauling goods and produce through the town from one adjacent township to another.

So also in the case of *Cary* v. *North Plainfield,* 49 N. J. L. 110, 113, 7 Atl. 42, 13 the court said: "The inconvenience attendant upon the exercise by every municipality in the State of the power of excluding from its limits all unlicensed vehicles engaged in transporting goods or passengers for hire, is manifest. Its legitimate operation would require the owners of such vehicles to obtain licenses not only from the authorities of the place where their business had its headquarters, but also from every neighboring town into which their casual engagements might call them, or else to unload their vehicles at the border line. A general law having effects so burdensome or so absurd is not to be anticipated, and only unequivocal language could convince a court that such legislation was intended. The statute now under review is not of this character. Its terms are satisfied by holding that license taxes are to be imposed only by that municipality in which *the business or occupation is carried on or conducted.*" *Commonwealth* v. *Stodder,* 2 Cush. 562, 48 Am. Dec. 679; *St. Charles* v. *Nolle,* 51 Mo. 122, 11 Am. Rep. 440; *East St. Louis* v. *Bux,* 43 Ill. App. 276.

The same principle is recognized by this court in *Frommer* v. *City of Richmond,* 31 Gratt. 646, 31 Am. Rep. 746. Frommer lived outside of the city limits, but rented a stall in the

city market, where he conducted his business as a butcher. He prepared his meat for market at his residence, and used his carts to haul it to his stall in the market. Upon these facts, the court held that Frommer was amenable to license tax on the carts thus used. The court rested its decision on the ground that the license tax was exacted for the privilege of using the carts on the streets of the city in pursuit of the owner's business in the city.

If the plaintiff in error had established a coal yard within the corporate limits of Manchester, the case would have been analogous to Frommer's case and ruled by it. But it is clear that the sporadic act of hauling a single consignment of coal from the siding in Manchester over the streets of the city to its customer on the outside was not carrying on such a business or occupation within the city as would subject the coal company to the license tax on vehicles imposed by the ordinance.

The conviction and fine imposed for the alleged violation of the ordinance was consequently illegal, and the judgment must be reversed and the proceeding dismissed with costs.

*Reversed.*