13355

PEE DEE CHAIR CO. v. CITY OF CAMDEN

(162 S. E., 771)

*Mr. L. A. Wittkowsky,* for appellant,

*Messrs. Kirkland & DeLoach* and *Dargan & Paulling,* for respondent,

February 24, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This case involves the construction of an ordinance of the City of Camden. The plaintiff, Pee Dee Chair Company, is a corporation with its principal place of business in the City of Darlington, S. C., where it is engaged in the manufacture and sale in wholesale quantities of chairs and other

furniture to retail dealers at other points, delivering its products by railroad or by its own trucks, without charge to the purchasers. On June 20, 1931, in pursuance of a previous order, it delivered some chairs by its own truck to the Camden Furniture Company, at Camden, S. C. When the delivery was completed, the driver of the truck, a salaried employee of the chair company, was arrested by a police officer of the City of Camden, upon the charge that such delivery of merchandise constituted a violation of an ordinance of that city requiring the payment of license taxes on certain businesses or occupations carried on in the city. By agreement the charge against the driver was withdrawn upon the payment by the chair company to the city of a license tax of $50.00, which was paid under protest, and the company thereupon brought this action against the city to recover the amount so paid. The case was heard before his Honor, Judge W. H. Townsend, who passed a decree directing that the plaintiff recover judgment against the city for $50.00 and costs, upon the ground that the delivery of the chairs by truck was, under the circumstances of the case, "a mere incident to plaintiff's business in Darlington, and did not constitute a doing of business or occupation by plaintiff or its agent in Camden, within the meaning of the ordinance, and was not taxable." From this decree defendant appeals.

The ordinance in question requires that every person, firm, company, or corporation engaged in any business, calling, profession, or occupation, in whole or in part within the City of Camden, as specified therein, shall obtain a license therefor before entering upon such business, calling, profession, or occupation, fixes the penalty for violation of its terms, and provides, *inter alia:* "The following sum or sums of money are required to be paid to the said clerk and treasurer for a license to carry on the business, calling, profession or occupation in whole or in part within the limits of the City of Camden, as in each case specifically appears. * * *

Trucks hauling merchandise, in or out of the city either in connection with or without fruit and green produce $50.00."

It will be noted that the ordinance requires the payment of a license tax for carrying on a "business, calling, profession or occupation" within the city limits of Camden, and the tax here was charged as for "trucks hauling merchandise." The only question, therefore, is whether the chair company, by its delivery of the chairs under the circumstances related, was carrying on the business designated as "trucks hauling merchandise."

A statute or an ordinance requiring a business license or imposing a license or occupation tax must be construed liberally in favor of the citizen and strictly against the government, and no one can be held to payment of the tax unless he comes clearly within the terms of the particular statute or ordinance. See 37 C. J., 212, 213, 249; *Crenshaw v. Moore,* 124 Tenn., 528, 137 S. W., 924, 34 L. R. A. (N. S.), 1161, Ann. Cas., 1913-A, 165; *Town of Plymouth v. Cooper,* 135 N. C., 1, 47 S. E., 129; *Derrick v. Commonwealth,* 122 Va., 906, 95 S. E., 392, L. R. A., 1918-D, 284; *Bennett v. Birmingham,* 31 Pa., 15; *Chevrolet Motor Co. v. Atlanta,* 115 Ga., 43, 116 S. E., 287.

It is not always an easy matter to give a satisfactory definition of "business" or "occupation," as used in a statute or ordinance like the one before us, but the terms ordinarily carry with them some idea of custom or continuity as opposed to an isolated or sporadic act.

In 37 C. J., at page 216, it is said: "Engaging in or carrying on a business, within such a law, does not embrace acts performed preliminary and preparatory to engaging in business; or acts performed after the business has ceased, incidental to the preservation of property. The performance of a single act, or even a number of isolated acts, pertaining to a particular business, does not constitute engaging in or carrying on such business within the meaning of a law imposing a license or tax thereon, unless an intent to engage in

the business is clearly apparent." And at page 265: "Although, under some circumstances, a single act pertaining to a given business or occupation, without a license, may be sufficient to constitute an offense within the contemplation of the statute or ordinance, as a general rule a single act pertaining to a particular business is not, when done without a license, engaging in or carrying on such business, so as to constitute an offense; it is only repeated and continuous acts that constitute the offense."

In *Town of Plymouth v. Cooper, supra,* the defendant was convicted of carrying on a livery business without a license in violation of a city ordinance, which contained the following provision with reference to taxation: "On livery stables and persons keeping a horse or horses for hire, or doing any livery business or hiring of horses in the town, $7.50. This shall include any persons making contract for hire in town, or carrying any person with a vehicle out of the town for hire." It appears that defendant was a resident of the village of Roper, N. C., where he carried on a livery business, having obtained from the county and State the license required by law. While at his home he received a letter from a traveling salesman at Elizabeth City, N. C., asking him to meet the salesman at Plymouth, N. C., and convey him to Roper and thence to other points. Defendant wrote the salesman that he would do so and did do so, whereupon he was convicted of carrying on a livery business in Plymouth without a license. On appeal, the Supreme Court of North Carolina, in declaring the ordinance not only unreasonable but clearly unlawful, adverted to the fact that the town relied on a single act of the defendant as constituting a "business," but said that the town could not, by calling a single act a "business," make it so nor create the right to tax where it did not already exist, but added: "If the defendant had made a business of sending his hacks regularly into the Town of Plymouth, the case would be different, but there is neither evidence nor suggestion of such a fact."

In *White Oak Coal Company v. Manchester,* 109 Va., 749, 64 S. E., 944, 132 Am. St. Rep., 943, the coal company was engaged in business in the City of Richmond, where it paid a license tax on the wagons employed in its business. Having sold a consignment of coal to a customer in Chesterfield County, it caused the cars containing the coal to be stopped on a siding of the railroad company in the City of Manchester, and from that point proceeded to haul the coal in its wagons over the streets of that city to the purchaser's place of business outside the city limits. An ordinance of Manchester provided that "no wagon, dray * * * or other wheel carriage shall be kept or employed in the city for hire, directly or indirectly, unless the owner or keeper thereof obtain a license therefor." The coal company, having failed to obtain a license, was convicted and fined for alleged violation of the ordinance, and appealed to the Supreme Court of Appeals of Virginia. In reversing the Court below, the Supreme Court said: "If the plaintiff in error had established a coalyard within the corporate limits of Manchester, the case would have been analogous to *Frommer's case* [31 Grat., 646, 31 Am. Rep., 746], and ruled by it. But it is clear that the sporadic act of hauling a single consignment of coal from the siding in Manchester over the streets of the city to its customer on the outside was not carrying on such a business or occupation within the city as would subject the coal company to the license tax on vehicles imposed by the ordinance."

In *Cary v. North Plainfield,* 49 N. J. Law, 110, 7 A., 42, 43, the Court said: "The inconvenience attendant upon the exercise, by every municipality in the State, of the power of excluding from its limits all unlicensed vehicles, engaged in transporting goods or passengers for hire, is manifest. Its legitimate operation would require the owners of such vehicles to obtain licenses, not only from the authorities of the place where their business had its headquarters, but also from every neighboring town into which their casual en-

gagements might call them, or else to unload their vehicles at the border line. A general law having effects so burdensome or so absurd is not to be anticipated, and only unequivocal language could convince a Court that such legislation was intended. The statute now under review is not of this character. Its terms are satisfied by holding that license taxes are to be imposed only by that municipality in which the business or occupation is carried on or conducted."

In *State v. Moorehead,* 42 S. C., 211, 20 S. E., 544, 545, 26 L. R. A., 585, 46 Am. St. Rep., 719, this Court quoted with approval from *Commonwealth v. Farnum,* 114 Mass., 267, a case not on all fours with, but somewhat analogous to, the case at bar : "Upon these facts we think the jury should have been instructed that the defendant was not liable. He was an agent soliciting orders, and a carrier delivering machines ordered. He made no direct sales himself. He did not carry and expose goods for sale, within the meaning of the statute, and his acts did not come within the mischief the statute is intended to prevent. The article he carried was a sample of that which he proposed the purchaser should buy of the company. The fact that he occasionally delivered the sample machine to a purchaser desirous of obtaining one immediately cannot so change the character of his business as to bring him within the statute. Nor did the fact that he sold one attachment, and one truck marker capable of being attached, render him liable; it distinctly appearing that it was not his practice to make such sales. The question is to be determined upon the general character and scope of his business. If this does not bring him within the statute, he is not liable for single sales, being exceptional, and not in the course of his ordinary employment."

*State v. Napier,* 63 S. C., 60, 41 S. E., 13, 15, contains an excellent statement as to what is involved in the carrying on of a business within the purview of a statute imposing a license tax. The defendant in that case was convicted of vio-

lating the Emigrant Agents Act. On appeal, the Supreme Court, after pointing out that the offense made punishable by the statute was "doing or carrying on the business of hiring laborers or soliciting emigrants in this State, to be employed beyond the limits of the State, without a license," said: "As the carrying on of a business or the plying of a vocation necessarily involves the idea of successive acts— continuity of habit—we do not think proof of a single act of hiring or soliciting a laborer to be employed beyond the State limit would serve for conviction of the statutory offense under consideration, unless it was under circumstances which would raise a presumption of other such acts, so many as constitute the unlawful business or vocation."

While, as suggested, a single act might, under some conditions, constitute the carrying on of a "business" within the contemplation of a license tax statute or ordinance (see the Tennessee case of *Trentham v. Moore*, 111 Tenn., 346, 76 S. W., 904), we find nothing in the circumstances of the case at bar to bring it within such class. Admittedly, only one load of chairs was delivered, and there is no suggestion that plaintiff intended to make any further deliveries. There is nothing whatever in the record to show that the delivery relied upon as constituting a taxable "business" was other than it appears on the surface, an isolated incidental or casual one, and there is an utter lack of circumstances to "raise a presumption of other such acts" or to indicate any intention on plaintiff's part to engage in the business of hauling merchandise by trucks in the City of Camden.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE FEATHERSTONE concur.