15196

PONDER *ET AL.* v. CITY OF GREENVILLE *ET AL.*

(12 S. E. (2d), 851)

*Mr. A. C. Mann,* for appellants,

*Messrs. Johnson & Johnson* as *Amici Curiae,*

*Messrs. Wyche, Burgess & Wofford,* for respondents,

January 8, 1941.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE L. D. LIDE.

This appeal involves certain questions as to the construction and constitutionality of an amendment enacted in 1939 to Section 7433, Code 1932, Acts 1939, page 137, relating to business licenses issued by cities and towns. This amendment is in the nature and form of a proviso as follows:

*"Provided, However,* That wholesalers delivering goods to retailers in any municipality shall not be charged a business license therein by such municipality, unless such wholesaler maintains, within such municipality, a warehouse or mercantile establishment for distribution of the wholesalers' goods."

The following excerpt from the statement contained in the Transcript of Record gives the pertinent facts of the case, all of which are undisputed:

"The City of Greenville demanded and sought to collect a wholesalers' license tax from each of the plaintiffs for the year 1940 under the provisions of the State statutes, and the city ordinances passed by the Greenville city council, including the 1940 Supply Bill, wherein wholesalers doing business within the corporate limits of the City of Greenville are required to pay a license for the privilege of carrying on business within the corporate limits of said city from the 1st of January, 1940, to the 31st day of December, 1940, inclusive, based upon the amount of business done by the wholesalers. The plaintiffs contend that they are exempt from such license under the terms of Act No. 96 of the Statutes at Large of South Carolina, 1939, Volume XLI, page 137.

"Plaintiff's manufacturing and distributing plants are all located at Greer, S. C., and they make sales and deliveries from motor trucks in the City of Greenville. The goods and merchandise placed on these trucks at Greer, S. C., for sale and delivery in the City of Greenville, S. C., are not all previously sold on order or otherwise, and the drivers of the trucks in some instances solicit, sell, deliver, and collect, take up crates, unsold goods and merchandise, making the sales and deliveries from the truck, loading goods and merchandise taken up on the truck, which is on the streets within the city going from one retail establishment to another in handling the goods and merchandise of plaintiffs. In other instances trucks call upon regular customers according to previous arrangements and deliver whatever these customers need for the day.

"The plaintiff, Ponder Ice Cream Company, has from 40 to 50 customers in the city, and in most of the places owns and maintains refrigerating units in which it places its goods and merchandise for sale and distribution by the retail stores. It usually makes daily trips, the truck remaining in the city most of each day. The Greer Bakery has about 75 customers within the City of Greenville, makes daily trips with one truck which remains most of the day in the city, and it has racks in some of the retail stores on which it places its goods for display and sale, and has arrangements at other stores with other bakeries to place its products on their display racks for sale and distribution by the retail store.

"The Greer Bottling Company has from 15 to 20 customers within the city and maintains a truck which makes trips to the City of Greenville four days a week, where it remains for several hours each day. And in addition to soliciting, selling, delivering and collecting, it takes up unsold merchandise and crates on which it has previously required deposits.

"These wholesalers do not know how much will be sold, delivered and collected for when the truck is loaded up in Greer for its trips to the City of Greenville. The truck is loaded with such goods and quantities as the wholesalers hope to sell within the City of Greenville during the day."

The City of Greenville by its pleadings contended that the 1939 amendment is unconstitutional as being in violation of the equal protection of the laws clauses of the Fourteenth Amendment to the Federal Constitution, and also of Article I, Section 5, of the State Constitution. And it was further contended in behalf of the city that the plaintiffs are engaged in business within the corporate limits thereof because of the use of motor trucks by which they transport large quantities of their merchandise to the city and spend many hours each day in soliciting and making sales to their customers, without previous orders, as well as making collections, taking up unsold merchandise, and maintaining

equipment for the sale and distribution of their products in retail establishments within the city. And the defendants in substance maintain that if the amendment be declared constitutional it should be construed to relate only to the delivery of goods in the city on previous orders, and not to such transactions as those of plaintiffs, who should therefore be held subject to the wholesale license tax ordinances of the city.

The cause in due course came on to be heard before Hon. J. Strom Thurmond, presiding Judge, who after mature consideration filed an elaborate decree dated June 8, 1940, sustaining the contention of the plaintiffs and holding that they were not subject to the license tax and that the city should be enjoined from collecting the same. The case comes to this Court upon appeal from the decree of Judge Thurmond, and the exceptions question the constitutionality of the 1939 amendment, and also question the correctness of its construction by the Circuit Court, if the same be constitutional.

It occurs to us that perhaps it would be more logical to ascertain the true intent and meaning of the amendment before considering its constitutionality. As an aid to this we might take a glance at the apparent background of the legislative Act adopting the amendment.

After the motor truck method of delivery had developed and come into general use, so that goods might be delivered from such trucks in the cities and towns of the State, even from distant points outside of the State, municipal authorities generally began to consider the feasibility of imposing a license tax on such transactions, doubtless being urged to do so by the local merchants who felt the pressure of the growing competition. On the other hand, the consuming public were perhaps more or less favorable to the motor truck invasion, because of the increased competition, and also because certain fruits and other merchandise thereby became more available.

Some of these license tax ordinances from time to time came before this Court. In the case of *Pee Dee Chair Company v. City of Camden,* 165 S. C., 86, 162 S. E., 771, it was held that an outside manufacturer which delivered by truck a single load of goods to a local buyer was not liable to the license tax imposed for carrying on the business of hauling merchandise by truck within the municipality, because the term "business" implies custom or continuity. And then a case came to the Court from Bishopville, to wit, *Crosswell & Co., Inc., v. Town of Bishopville,* 172 S. C., 26, 172 S. E., 698, wherein it was held that an outside wholesale grocer who for two years sent a truck once or twice during each week to deliver merchandise in the Town of Bishopville was liable for license taxes as "doing business" in the town. It was also decided in that case that a nonresident merchant may be placed in a different class from a local merchant and a different license tax imposed, if all persons in like circumstances are treated alike. In the still later case of *American Bakeries Co. v. City of Sumter,* 173 S. C., 94, 174 S. E., 919, this Court held that that city had the right to fix a lower license fee for local bakeries than for bakeries with established places of business out of the city but selling or delivering products within the city, there being nothing to show that imposition of a higher license on nonresidents was unreasonable, capricious or confiscatory.

Evidently the principal difficulty in imposing a license tax on the sale or delivery of goods from trucks arose out of congressional control of interstate commerce under the Federal Constitution, and it is because of these laws that distinctions have been drawn between delivering goods previously ordered and the delivery or sale of such goods where no previous order had been given. Where the order was previously given the goods were deemed still in transit in interstate commerce; otherwise, the interstate character of the transaction was held to have ceased and the goods to have become local. Such a distinction must of course be recognized in interstate commerce, but has no special sig-

nificance in other relations. And in this connection it may be of interest to observe that even the interstate commerce rule has been relaxed so as to permit the imposition of municipal sales taxes levied under the authority of a State law. *McGoldrick v. Feld & Tarrant Mfg. Co.*, 309 U. S., 70, 60 S. Ct., 404, 84 L. Ed., 584.

Doubtless mainly because of the difficulties arising from the requirements of the interstate commerce laws a good many of the towns and cities concluded that the best method of meeting the situation was to impose a license tax on the operation of motor trucks for the use of the streets of a municipality and a number of these ordinances were brought before this Court in its original jurisdiction in the case of *Southern Fruit Co., Inc., v. Porter*, 188 S. C., 422, 199 S. E., 537, 540, which was really a combination of several cases; and in the well-considered opinion of Mr. Justice Fishburne it was held that all of these ordinances were invalid, there being no statute authorizing the same, and the municipalities were enjoined from collecting the tax. In these cases orders were taken and forwarded to the wholesalers, who made delivery by truck, but no sale or delivery of goods was made from warehouses in South Carolina, and no sale was made from any of the trucks. While these ordinances were held invalid the Court very clearly pointed out that: "The right to travel on and along the streets of a city belongs to the general public. An ordinance cannot legally be made which contravenes a common right, unless the power to do so be plainly conferred by a valid and competent legislative grant." The opinion was delivered on November 4, 1938, and the amendment now under consideration was enacted by the General Assembly in 1939. But it will be observed that evidently the policy of the Legislature was adverse to the adoption of an enabling Act, such as that referred to in the opinion, for instead of passing such an Act which would have enabled the cities and towns to impose a license tax which would be operative against interstate concerns, as well as others, provided it

was exacted for the use of the streets only, they apparently concluded that the best interests of the public would be subserved by preventing the imposition of a business license tax upon any wholesaler whomsoever, unless he maintained within the municipality a warehouse or mercantile establishment for the distribution of his goods.

The contention of the appellant City of Greenville is that the amendment even if constitutional must be construed to be limited to the delivery of goods upon orders previously taken, analogous to the rule in interstate commerce. But we are unable to give so narrow an interpretation to the amendment. For it will be observed that it does not provide that such wholesalers delivering goods to retailers in these municipalities shall not be charged a license fee for such *delivery*, but that they shall not be charged a *"business license"*.

It is true that in the body of the section, in connection with which the proviso should be construed, municipalities are empowered to collect license taxes for the conduct of any business conducted "in whole or in part" within the limits of such municipalities, but it will be noted that the license tax ordinance of the City of Greenville used this identical language, that is to say, the phrase "in whole or in part", and makes no distinction in the amount charged, whether such business be carried on in whole or in part; the same being based on the total of sales or receipts.

The amendment doubtless alludes specifically to *delivering* goods, because clearly that is what is actually accomplished, whether the orders be taken before or at the time the driver of the truck calls upon the customers. The delivery is the essential part of the transaction, in consummation of the sale. As was distinctly held in the case of *Southern Liquor Distributors, Inc., v. Daniel, Attorney General,* 179 S. C., 219, 183 S. E., 765, 766, the delivery of liquor is very necessary to the consummation of the sale thereof, and that wholesalers of liquors "are still engaged in the business of selling liquor when they are delivering it".

Hence it was determined that in view of the terms of the liquor law exempting wholesale dealers from municipal taxes and licenses, towns and cities could not impose a delivery license tax on them.

As an aid to the construction of this amendment, attention is called to the title thereof, as follows, to wit: "An Act to Amend Section 7433, of the 1932 South Carolina Code of Laws Relating to Business Licenses in Municipalities Containing Over One Thousand Inhabitants by Adding a Proviso Thereto *so as to Limit the Licenses Charged to Wholesalers by Such Municipalities as Have a Distributing House of Such Wholesaler Located Therein.*" (Italics added.)

It will be observed that the title to the amendment indicates that its purpose is to limit licenses charged by municipalities to those wholesalers who have distributing houses located therein. In other words, it was not contemplated that out-of-town wholesalers should have to pay any license, whether for delivery or for other acts incidental to the legitimate conduct of their business. It is, of course, well settled that the title of an Act may be resorted to for light on its construction. *Arthur v. Johnson, Governor,* 185 S. C., 324, 194 S. E., 151.

One of the exceptions states that the obvious purpose of the 1939 Act was to place all State wholesalers on the same basis as out of State or foreign wholesalers doing business in interstate commerce. But there is no statement to that effect in the amendment, and for the reasons already indicated we do not think it can be fairly construed to relate only to the delivery of goods based on previous orders so as to apply the interstate commerce rule to intrastate commerce. However, it is quite true that the effect of the Act is to put all out-of-town wholesalers, including those out of State, on a parity, where they have no warehouse or mercantile establishment within the municipality.

Incidentally it may be mentioned that the point is raised that the motor trucks of the plaintiffs, their refrigerator units and display racks, might be considered as equivalent to a warehouse or mercantile establishment within the corporate limits, but this seems to us to be too fanciful or far-fetched to be deemed in anywise tenable.

In view of our interpretation of the amendment in question, is the same constitutional as against the objection duly and timely made by the appellants that it violates the equal protection clauses of both the State and Federal Constitutions?

Certainly the 1939 amendment does not come within the constitutional inhibition unless the classification therein made has no rational basis. As stated by the trial Judge, the statute divides wholesalers into two classes, to wit, (1) those who maintain within the municipality a warehouse or mercantile establishment, and (2) those who do not maintain such a warehouse or mercantile establishment. We cannot conceive how this classification could be regarded as arbitrary, capricious or unreasonable. The wholesaler who puts up a warehouse or other distributing establishment within the limits of a city does so because of its obvious advantages to him, for it facilitates him in carrying on his business within the city, and for such a privilege he may be required to pay a license tax. On the other hand, the out-of-town wholesaler who has no such warehouse or distributing establishment is without such advantages, and we think the Legislature may constitutionally exempt him from the payment of a license tax, if they see fit to do so. We do not overlook the fact that a wholesaler may have a warehouse or mercantile establishment just outside of the city limits, although this was not the case in the instant suit. But a similar situation arises as to suburban residents, who obtain many advantages of the adjoining city or town without having, for example, to pay property taxes to the city. We recognize that such a consideration might have its co-

gent appeal to the legislative department, but it cannot be regarded by us where, as here, the classification is reasonable.

In the case of *Cowart v. City Council of Greenville,* 67 S. C., 35, 45 S. E., 122, 125, relating to a license tax by that city, the Court quoted with approval the following excellent statement of the law: "Legislation is not unequal nor discriminatory, in the sense of the equality clause of the Constitution, merely because it is specific or limited to a particular class. The decisions of the United States Supreme Court establish that the Legislature had power to make a classification of persons or property for public purposes, provided such classification is not arbitrary and bears reasonable relation to the purpose to be effectuated, and that the equality clause is not violated when all within the designated class are treated alike."

The law is likewise very definitely and clearly stated to the same effect in two of the cases already cited by us, in each of which the opinion was delivered by that just and discerning jurist, the late Hon. W. C. Cothran, as Acting Associate Justice. In one of these cases, to wit, *American Bakeries Company v. City of Sumter,* 173 S. C., 94, 174 S. E., 919, 920, *supra,* the Court says: "Courts have been quite liberal in according to municipalities the right to classify the subjects to license taxes, and such classifications are generally upheld where the subjects are in different conditions; where the selection is not capricious and arbitrary; where there exists a reasonable ground for difference or policy."

And in the other case, to wit, *Crosswell & Co., Inc., v. Town of Bishopville,* 172 S. C., 26, 172 S. E., 698, 700, *supra,* it was held that a merchant residing in another town may be placed in a different class from the local merchant and a different license tax imposed; the following statement of the law being quoted with approval: "While there may be apparent discrimination, if, however, a statute treats all persons alike under like circumstances and conditions, it can-

not be said to deprive anyone of the equal protection of the laws."

We have endeavored to give careful consideration to all the exceptions, including every point therein raised or suggested, whether hereinbefore mentioned or not, and our conclusion is that they should be overruled.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER, FISHBURNE and STUKES concur.