————o————

THE CITY OF ST. CHARLES, Appellant, *vs.* FRITZ NOLLE, Respondent.

1. *St. Charles. Charter of. Ordinance on Wagons, etc.*—So much of the ordinance of the city of St. Charles requiring a license tax for wagons used for pay, as attempted to impose a tax upon wagons of outside residents engaged in hauling into and out of the city, was void as not being authorized by the charter of that city, and the Legislature could give the City Council no authority to pass such an ordinance. The tax being upon outside citizens and for the benefit of those living in the city, would be in effect taking property for private use; that is, for the use of a particular community of which the outside citizens form no part.

*Appeal from St. Charles Circuit Court.*

F. *McDearmon*, City Attorney, for Appellant, cited Gartside *vs.* East St. Louis, 43 Ill. 47; Kennedy *vs.* Snowden, 1 McMill. 323; Dillon on Munic. Corp. p. 135, § 93, p. 278, §§ 250, 253; p. 522, § 540.

*T. Bruere*, for Respondent.

ADAMS, Judge, delivered the opinion of the court.

This was a prosecution commenced before the Recorder of the city of St. Charles, charging the defendant with violating an ordinance of the city requiring a license tax for wagons used for pay, from which an appeal was taken to the Circuit Court, where the defendant was acquitted on the ground that the alleged ordinance is invalid.  The case was tried on the following agreed statement of facts: " Nolle, the defendant, was hauling lumber for Hallrah & Macheus from Judge's Landing on the Mississippi River about seven miles below the city of St. Charles, to their lumber yard in the city of St. Charles, without first having taken out a license under the above ordinance as a drayman or wagoner. Nolle is a farmer and non-resident of the city, living about five miles below the city in the neighborhood of said landing.  He does not make hauling for hire, his regular business, but did the hauling in this instance for compensation.  The above ordinance and original ordinance are considered in evidence.

The ordinance referred to is to the effect—" That every owner or driver of any dray, cart or wagon used or kept to carry or convey goods, wares or merchandise or any species of property or thing for hire, from one part of the city to another part, or *from places within the city to places without the city, or from places without the city to places within the city* shall register and number the same with the city Register," give bonds, &c., &c.

The charter of the city of St. Charles provides that " the Mayor and councilmen shall have power by ordinance, to provide for licensing, taxing and regulating hacks, drays, wagons and other vehicles used within the city for pay." It is also provided by the charter that " they shall have power to pass ordinances for the regulation and police of said city, and the commons, thereunto attached and belonging, as the said Mayor and councilmen shall deem necessary to carry into effect the object of this act, and the power hereby granted as the good of the inhabitants may require."

These are all the provisions of the charter bearing on the question. A city can only pass such ordinances as are warranted by its charter. There seems to be no authority, expressed or implied, in the charter of the city of St. Charles to authorize the imposition of a tax license on wagons engaged in hauling outside of the city.

It was not contemplated by the legislature that the free ingress, egress and regress of outside citizens should be impeded by taxation, to be imposed by the city. It cannot be found in that part of the charter allowing tax license to be imposed on wagons, &c., used for pay in the city. The language used excludes such interpretation—" *expressio unius exclusio alterius.*"

The conclusion cannot be drawn from the authority to regulate the police of the city, for that must be confined to the city limits.

Besides, if the legislature had given the power in so many words, in my judgment, such legislation would have been void as going beyond the limitation of legislative power. Although there may not be any express limitation on legislative power in our State constitution, in many instances the very nature of our State governments and the purposes for which they were created, must form a barrier to legislation which deprives one portion of the community of its property for the benefit of others.

The proper construction of the constitution in regard to taxing private property for public use, is that it can be taken only for public use and not for private use at all, and when taken for public use there must be a just compensation allowed and paid. To tax occupations outside of the city, for the benefit of those living in the city, is in effect, taking the property of the citizens for private use ; that is for the use of a particular community, of which the outside citizens form no part. Whether it be called a tax or the appropriation of property, the result is precisely the same. In Wells *vs.* the City of Weston, 22 Mo., 384, Judge Leonard in an able opin-

ion which was concurred in by the whole court, vindicated the position here assumed.

The legislature had undertaken to empower the city of Weston to tax lands adjoining the city, to the extent of a half mile, for local purposes; and the city under this authority had imposed taxes which the plaintiff Wells resisted.   The court pronounced the law unconstitutional.   I am aware that in Virginia, in Laughore & Scott *vs.* Robinson, 20 Grattan's Rep. 661, a question somewhat similar arose and by a divided court court the constitutionality of the act of the Virginia legislature was upheld as being consistent with the constitution of 1830.   The town of Lynchburg was authorized to issue bonds for stock in the Lynchburg & Tennesse Railroad Co. bearing six per cent. interest, and for payment to levy taxes upon the lands, property and persons of all those within the town proper and for half a mile beyond its limits.   The opinion of the court was based upon the taxing power of the State legislature, and as there was no constitutional limitation on this power, the court held that the legislature could transfer this power to any particular municipality or body of men, to be exercised by them instead of the legislature.   The case of Wells *vs.* The City of Weston, was not referred to by the Virginia court, and the line of reasoning maintained by our court, was wholly ignored by Judge Jones in the Virginia case.   We must adhere to the principles laid down by our own court as being more consonant with the implied limitations on all governments, which are only created for the protection of the citizen in his person and property.

" Power to violate those rights" says Judge Leonard "would seem to be quite beyond the lawful authority of any government, and certainly the legislative department of this government cannot arbitrarily take the property of one citizen and give it to another, and of course cannot authorize others to do so" (Wells *vs.* Weston, above referred to.)

So much of the ordinance under consideration, as attempted to impose a tax upon wagons hauling into and out of the city, we think was void as not being authorized by the charter, and

in my opinion the legislature could give no authority to pass such an ordinance.

The judgment must be affirmed. Judge Wagner concurs. Judge Bliss absent.