Tomlinson *v.* City of Indianapolis.

No. 17,716.

TOMLINSON *v.* CITY OF INDIANAPOLIS.

LICENSE.—*Use of Streets.—Market Wagon.—City.—Nonresident.*— A nonresident of a city may be lawfully compelled to pay a license for driving a market wagon upon its streets, when no discrimination is made against him on account of his nonresidence.

SAME.—*Toll for Use of Streets.—Vehicle.*—A toll for the use of the streets, instead of a tax on personal property, is imposed by a license fee charged on vehicles.

SAME.—*For Use of Streets.—Vehicle.—Reasonableness of Toll.*—The fact that some revenue arises to a city from fees collected from licenses for the use of streets by vehicles, and that it is applied to the repair of the streets, does not render a license of $3.00 per year for a one-horse market wagon unreasonable.

SAME.—*Toll for Use of Street.—Vehicle.—Police Power.*—The police power, and not the taxing power, is exercised in licensing the use of vehicles on streets.

SAME.—*Power of City to Exact License for Use of Street.—Vehicle.* —The power to license, and to exact a reasonable license fee, for the use of streets and alleys by vehicles, is within the power of a municipality, under a statute giving power to regulate such use.

From the Marion Superior Court.

*McCullough & Spaan*, for appellant.

*J. B. Curtis*, for appellee.

HOWARD, J.—By section 23 of the act in force March 6, 1891, known as the Indianapolis City Charter (section 3794, R. S. 1894), it is provided that the Common Council of said city shall have power to enact ordinances for certain purposes therein named, amongst others, "To regulate the use of streets and alleys by vehicles;" and "To license, tax and regulate wheeled vehicles, provided that the funds derived therefrom shall be applied only to the maintenance and repair of streets and alleys."

In pursuance of these provisions of the statute, the Common Council of said city passed general ordinance No. 61, 1893, entitled "An ordinance providing for license upon vehicles drawn upon the streets of the city of Indianapolis," etc.

In section 1 of said ordinance, certain annual license fees are specified to be paid by the owners of the several varieties and kinds of vehicles "used upon the streets of the city of Indianapolis," no limitation being made as to residence or other qualifications of such owners.

In section 2 of the ordinance, provision is made for licensing vehicles used by market gardeners, fruit-growers, florists, hucksters, liverymen and others hauling goods or merchandise to or out of said city, particular reference being had to persons living outside said city but doing business in the city. In all these cases the license fees are the lowest charged for the corresponding vehicles named in the first section, unless it be in the case of four-horse wagons used for hauling brick or ice.

Other sections provide in detail for the paying of fees and issue of license; for numbering the vehicles, and lighting them at night; for the width of tires; for penalties for violation of the ordinance; and for the use of the funds derived from the license in the repair of the streets and alleys of the city.

The appellant was arrested for the violation of sections 1, 2, and other sections of the ordinance, and on appeal to the court below was found guilty and fined. He assigns as error on this appeal that the court overruled his motion for a new trial. The reasons given in the motion for a new trial were that the finding and judgment were contrary to law and contrary to the evidence.

The appellant was a non-resident of the city and en-

gaged in market gardening, having a stand in the city to which he brought the products of his garden, without having procured a license for his market wagon.

The only question to be decided is whether it was unlawful to require appellant, a non-resident of the city, to pay a license fee, such as residents are required to pay, for driving his wagon upon the streets of the city.

He was charged with violating section 1 of the ordinance, as well as section 2. His was a one-horse wagon, used to bring vegetables to market. Under section 1 such a vehicle, whatever used for, or wherever the residence of its owner, is subject to an annual license fee of $3. Under section 2, the wagon, being a one-horse wagon owned by a person engaged as a gardener, is subject to the same annual license fee of $3.00.

We are unable to see in this any discrimination against appellant. Indeed, it would seem that the second section of the ordinance was framed simply to name and fix license fees for that class of vehicles. used by those who haul provisions and other articles into or out of the city, but who use the streets substantially the same as those whose wagons are driven entirely within the city limits. An inspection of the two sections shows that the non-resident owners of vehicles are rather more favored than the resident owners.

The only contention, in truth, which can be plausibly urged against the ordinance is that it charges those who drive upon the streets, but live outside the city limits, the same license fees charged against those residing in the city; and we do not think that the ordinance can, for this reason, be held invalid.

The Common Council, as we have seen, is given by the statute power to pass ordinances "to regulate the

use of streets and alleys by vehicles." This provision would of itself be sufficient authority to sustain the ordinance. The power to regulate implies the power to license and to exact a reasonable fee for such license. *Smith* v. *City of Madison*, 7 Ind. 86; *City of Anderson* v. *O'Conner*, 98 Ind. 168; *Scudder* v. *Hinshaw*, 134 Ind. 56.

But the statute further expressly provides that the council may pass ordinances "to license, tax and regulate wheeled vehicles." This is a police power, and not a taxing power. *City of Indianapolis* v. *Bieler*, 138 Ind. 30. The fee charged is but $3 per year. Nor is it any objection to this conclusion that some revenue arises to the city from the fees collected, or that such revenue is applied to the repair of the streets. The streets are used and in part worn out and put in a condition needing repair by the vehicles that are charged the license fee. See *City of Rochester* v. *Upman*, 19 Minn. 108; *State* v. *Cassidy*, 22 Minn. 321. Instead of being a tax on personal property, the license fee is rather in the nature of a toll charged for the use of the improved streets over which the vehicles are driven.

No discrimination whatever having been made against appellant on account of his residing outside the city limits, we have been unable to discover any good reason why he should not pay a license for his vehicle as well as any other person making like use of streets of the city. Indeed, he is at an advantage as compared with the city resident; he has paid no taxes to improve the streets and yet he uses them day after day in his business quite the same as a resident. It is manifestly but just that not having paid to improve the streets, he should at least pay the same

license fee for using them as is paid by those who have themselves paid their share of the cost of improving the streets. If this ordinance favors any one it is the non-resident rather than the resident.

The judgment is affirmed.

Filed March 4, 1896.

NOTE—On the question of discrimination between the residents of a municipality and other residents of the same State in municipal regulations, see note to *Sayre* v. *Phillips*, (Pa.) 16 L. R. A. 49.