## HENRY WONNER et al., Respondents, v. CITY OF CARTERVILLE et al., Appellants.

**Springfield Court of Appeals, February 7, 1910.**

1. **MUNICIPAL CORPORATIONS: License Tax: Business Outside Corporate Limits.** A city of the fourth class cannot, under its charter powers, regulate or require a license tax on any trade or business conducted outside of the city limits.

2. ————: **License Tax on Bakery Wagons: Statutory Constructon: Ejusdem Generis.** Under Revised Statutes 1899, sec. tion 5979, a city of the fourth class has the power to regulate and impose a license tax on bakery wagons operating in the city. Bakery wagons, being *ejusdem generis* with certain vehicles named in said section, are included in the term "all other vehicles," which follows the designation of the particular vehicles.

3. ————: ————: **Where Bakery is not in the City.** The power of a city of the fourth class to impose a license tax on bakery wagons operating in the city is not affected by the fact that the bakery by which said wagons are operated is not in the city. The right to tax the wagon is not dependent upon the right to tax the business.

4. **STATUTORY CONSTRUCTION: Ejusdem Generis.** The rule is that where general words follow particular ones, the courts will construe them as applicable only to persons or things of the same general character or class, and cannot include things wholly different from those specifically mentioned; but when it can be seen that the particular word by which the general word is followed was inserted, not to give a coloring to the general word, but for a distinct object, then, to carry out the purpose of the statute, the general word ought to govern. It is a mistake to allow the rule to pervert the construction.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair,* Judge.

REVERSED AND REMANDED (*with directions*).

Wonner v. Carterville.

*Abernathy & Bates* and *W. R. Robertson* for appellants.

(1)   If a city could lawfully exact of bakery wagons a license fee, it could properly, as a means of enforcing an ordinance therefor, make it an offense for an employee of the owner of such wagons to use it within the city when no license fee had been paid therefor.  City of Troy v. Harris, 102 Mo. App. 60; Kansas City v. Smith, 93 Mo. App. 217.  (2)   The imposition levied upon vehicles, under sections 5978 and 5979, Revised Statutes 1899, is not upon, or in any manner governed by, the business, or its location, in which the vehicle is used, except as the business may be referred to for the purposes of classification of vehicles.  The imposition is solely for the use of the streets by vehicles and not as a license for or a tax on the business.  St. Louis v. Wetzel, 130 Mo. 619; St. Louis v. Green, 7 Mo. App. 468, 70 Mo. 562; Kansas City v. Richardson, 90 Mo. App. 457; St. Louis v. Woodruff, 71 Mo. 92; Kansas City v. Smith, 93 Mo. App. 217; Farmington v. Rutherford, 94 Mo. App. 334; Aurora v. McGannon, 138 Mo. 38; Lancaster v. Biggs, 118 Mo. App. 574; Tomlinson v. Indianapolis, 144 Ind. 142, 43 N. E. 9, 36 L. R. A. 413; 28 Cyc., 732.  (3)   Section 5978, Revised Statutes 1899, expressly confers the power on cities of the fourth class to regulate and license and to levy and collect a license tax on carts, with bakery wagons included within its definition, and upon ice-wagons to which class bakery wagons belong.  See Webster's definition of "Cart." Kansas City v. Richardson, 90 Mo. App. 461; St. Louis v. Herthel, 14 Mo. App. 467, 88 Mo. 128; Kansas City v. Vinquest, 36 Mo. App. 584; St. Louis v. Bell Telephone Co., 96 Mo. 629; Bank v. Ripley, 161 Mo. 131.

*Geo. V. Farris, W. J. Owen* and *H. W. Currey* for respondents.

(1)   The plaintiffs as manufacturers could sell the products of their bakeries without violating any or-

dinance of the city.   Joplin v. Leckie, 78 Mo. App. 8.
(2)    Section 5978, Revised Statutes 1899, does not
expressly give cities of the fourth class power to levy
license tax on "bakery wagons," the power to license
"bakery wagons" is not fairly implied in, or incident to
the expressly granted powers; neither is the power to
tax "bakery wagons" indispensable to the objects and
purposes of the corporation and, hence, the ordinance
taxing "bakery wagons" is void for want of power in the
city to pass such ordinances.   All reasonable doubts as
to the existence of the power must be solved against the
city.     Independence   v.   Cleveland,   167   Mo.   384;
O'Dell v. Scranton, 126 Mo. App. 37.   (3)   As the city
cannot levy a tax on the bakeries—these manufactur-
ers—because they were outside its territorial limits, it
could not tax the employees or the wagons by means of
which the manufactured articles were sold in Carter-
ville.   Troy v. Harris, 102 Mo. App. 51; Express Co. v.
Rose Co., 124 Ga. 581; 53 S. E. 185, 5 L. R. A. (N. S.)
618; Rogers v. Saundersville, 57 S. E. 557.   (4)   The
case made shows that the city of Carterville was using
its police power to oppress citizens; that the plaintiffs
had no adequate remedy for the wrong done them by an
action for damage, and that a great number of suits had
been, and were about to be begun, against them.   In
such case injunctive relief will be granted.   Coal Co. v.
St. Louis, 130 Mo. 329; Bottling Co. v. Watson, 30 S. E.
270; Carpenter v. Realty Co., 103 Mo. App. 480.

STATEMENT.—The respondents in this case are
the proprietors of several bakeries located in Joplin and
Webb City, Missouri, and were doing business in the
city of Carterville at the time this suit was instituted by
means of wagons which daily visited the town, driv-
ing over the streets and selling bread to the inhabitants
and taking orders for bread within the city limits.   No
place of business was maintained by them within the
town nor were the teams and wagons kept in the town
except when being used there during the day.   The

drivers of the wagons had no interest in the business of respondents. The drivers for the several respondents were arrested and rearrested by the authorities of the city of Carterville under an ordinance which is as follows:

"Section 302. There is hereby levied and fixed a license tax upon the various objects, subjects, persons, businesses, trades, avocations and occupations, within the city of Carterville, Missouri, hereafter in this chapter named, and the same shall be licensed, taxed and regulated as hereinafter provided.

"Section 303. It shall be unlawful for any person, company or corporation to exercise, carry on or engage in any of the following businesses, trades, avocation, or occupations in the city of Carterville, Missouri, without first having obtained a license therefor from said city, and the charge for said license shall be as follows (after many other businesses enumerated) :

"Bakery, $10.00 per annum.

. . . . . . . . . . . . . . . .

"Vehicles: (For each vehicle or wagon) "Bakery wagon, $10.00 per annum. (Followed by ice wagons, laundry wagons, oil wagons, grocery and feed wagons, milk wagons, etc.)

"Section 311. No person, firm or corporation shall engage or participate in doing business in Carterville, Missouri, for which a license is required by this ordinance or shall attempt to do business, or hold himself or itself out to the public for the purpose of doing business or shall assist directly or indirectly in doing such business or any part of the same in any manner either as owner or proprietor or as officer, manager, superintendent, agent, servant or employee unless a license for the carrying on of or exercising such business shall have been duly issued and shall be in force. . . .

"Section 312. Any person or persons, firm or corporation who shall carry on or engage in any trade, business or occupation in the city of Carterville, Missouri,

or shall violate any of the provisions of this ordinance, shall be deemed guilty of a misdemeanor and of a separate and distinct offense and misdemeanor under the provisions hereof, for each twenty-four hours that such trade, business or occupation shall be carried on or engaged in without having obtained a license as herein provided for and required, shall be proceeded against as in case of other misdemeanors within the meaning of the ordinance of this city and upon conviction shall be fined for such misdemeanor and offense in any sum not less than five dollars nor more than one hundred dollars."

Neither the employers nor the employees had a license as required by the above sections. Upon each arrest, the driver was compelled to give bond. Respondents filed suit for an injunction in the circuit court of Jasper county and a temporary restraining order was issued. Later, appellant filed a motion to dissolve the temporary restraining order, which upon a hearing was overruled, and the temporary injunction was thereupon made perpetual. Motions for new trial and in arrest were filed, and these being overruled, the city of Carterville has perfected its appeal to this court. It is assigned as error that the trial court committed error in making a finding for the respondents.

NIXON, P. J.—(After stating the facts).—I. It is claimed by respondents as a reason in support of the judgment of the trial court that they were not subject to the license tax levied because their business was not within the territorial limits of the city of Carterville.

It is true that, according to the terms of the ordinance, the trades, businesses and avocations subject to the license, must be carried on within the city of Carterville, and the ordinance does not authorize the levy of any tax on any trade or business outside of the city. It goes without saying that if the ordinance had undertaken to levy a license tax on the business of respond-

ents transacted outside the city, it would have been wholly *ultra vires*. And since it is true that the bakeries of respondents were in Joplin and Webb City and outside the limits of the city of Carterville, their bakeries as such could not consequently have been made subject to a license tax levied by the city of Carterville as a bakery is a place where bakery products are made and sold. The city authorities made no attempt to enforce their ordinances against the respondents because they did not take out a license on their bakeries. The ordinances were leveled against the use of the bakery wagons on the streets of the city; and although these wagons belonged to the respondents, as well as the horses and entire outfit, and although the drivers were employed by the respondents, still the business of the sale of the products of respondents' bakeries was carried on within the city of Carterville, and according to the admissions in the record, these wagons were used in the business of plying the trade on the streets of Carterville, making regular trips loaded with bakery products to be sold from these wagons to customers or dealers, regularly traveling from house to house, selling and taking orders.

We do not doubt that under such circumstances, these wagons were being run in the city of Carterville for the purpose of carrying on the business of respondents within said city, no matter where the owners may have resided. The running of these wagons under the circumstances was within the scope and purview of the ordinances of the city of Carterville. It would seem that express provision was made to prevent the evasion of the ordinances by section 311 providing that no person, whether as owner, agent, servant or employee should directly or indirectly assist in any manner in carrying on or exercising any business without a license for which a license was required. The drivers and employees of respondents were engaged in driving these unlicensed wagons, and whether or not they could take

out a license in their own name is wholly immaterial, provided that the city had authority under its charter to levy the tax on the bakery wagons.

II. The respondents have challenged the authority of the city under its charter to levy a tax on their wagons.

The statute, R. S. 1899, section 5979, provides that "cities of the fourth class (of which the city of Carterville is one) shall have and exercise exclusive control over all streets, alleys, avenues and public highways within the city limits of such city." And section 5978 provides that "The mayor and board of aldermen shall have power and authority to regulate and to license, and to levy and collect a license tax on . . . merchants of all kinds, grocers, . . . butchers, . . . hackney-carriages, omnibuses, carts, drays, transfer and job wagons, *ice wagons, and all other vehicles.* . . and all other businesses, trades and avocations whatever. . . . ."

The point is made at the outset by respondents that these statutes confer no power upon the city to levy and collect a license tax on bakery wagons, and the rule is invoked that where particular words of description are used (as "hackney-carriages, omnibuses, carts, drays, transfer and job wagons, ice wagons," etc.) followed by general words (such as "and all other vehicles") the latter are limited in their meaning so as to embrace only a class of things indicated by the particular words, and that bakery wagons do not belong to the same class as the particular wagons, carts, etc., enumerated in the statute; that the general words follow words of description and do not enlarge the prior particular words, but are restricted in their application to classes similar to those specifically designated.

The rule unquestionably is that where general words follow particular ones, the courts will construe them as applicable only to persons or things of the same general character or class, and cannot include things

wholly different from those specifically mentioned. [St.
Louis v. Laughlin, 49 Mo. 559; State ex rel. v. Bersch,
83 Mo. App. 657; State v. Rosenblatt, 185 Mo. 114, 83
S. W. 975.]

The question is, Are bakery wagons *ejusdem gen-
eris* with the other vehicles enumerated in the statute?
We think that ice wagons and bakery wagons fall with-
in the same general class. They handle business in the
same manner, go over the same routes in the same way
soliciting business or filling orders, and are in every es-
sential respect similar. The rule of *ejusdem generis* is
meant to carry out, not to defeat the legislative intent.
When it can be seen that the particular word by which
the general word is followed was inserted, not to give a
coloring to the general word, but for a distinct object,
then, to carry out the purpose of the statute, the gen-
eral word ought to govern. It is a mistake to allow
the rule to pervert the construction. [State v. Broder-
ick, 7 Mo. App. 19, 20.]

This rule of interpretation of statutes has received
many applications. In the case of St. Louis v. Wood-
ruff, 71 Mo. 92, the charter gave the city power "to li-
cense, tax and regulate street railroad cars, hackney-
carriages, omnibuses, carts, drays, *and other vehicles.*"
(It will be noticed that the class of vehicles here men-
tioned is almost identical with those listed in the stat-
ute governing cities of the fourth class.) The defendant
in that case was the driver of a street-sprinkling cart
without a license as required by an ordinance, sprink-
ling the streets in front of the property of owners who
contracted to pay him a certain sum for such service.
The ordinance levied a license tax "upon all public ve-
hicles . . . for trade or traffic or for any other
purpose." The vehicles were to be taxed according to
class: "On each two-horse wagon, not before men-
tioned, ten dollars." It was held that the sprinkling
cart fell within the general classification. The court
say: "The language (of the statute) is almost compre-

hensive enough to embrace wheelbarrows," referring to the general clause in the statute, "and other vehicles."

In the case of St. Louis v. Herthel, 88 Mo. 128, the charter gave the city power "to license, tax and regulate lawyers, doctors, doctoresses, undertakers, dentists, auctioneers, . . . (about fifty other pursuits, avocations and trades are specified) and all other business, trades, avocations or professions whatever." Architects, though not named, were held *ejusdem generis* with lawyers, doctors, dentists, etc., as exercising a profession of a technical character.

In the case of Kansas City v. Vindquest, 36 Mo. App. 584, the statute specified auctioneers, grocers, retailers, merchants, etc., and ice wagons. It was held that an ice dealer fell within the term "merchant," and the fact that "ice wagons" were specified did not thereby exclude ice dealers, as some ice dealers have no wagons.

The power of a city of the fourth class to tax bakery wagons is beyond all doubt, and hence the case of Independence v. Cleveland, 167 Mo. 384, 67 S. W. 216, and others cited by respondents, decided upon a different state of facts, are not applicable to this case.

III.    But it is further contended that the city had no right to exact a license tax of vehicles of *non-resident businesses,* and that the city could not require a tax on wagons used in a business when that *business* could not be required to pay a license charge. In other words, that the right to tax the wagon is dependent upon the right to tax the business.

The ordinance does provide that it shall be "unlawful for any person, company or corporation to exercise, carry on or engage in any of the following businesses, trades, avocations, or occupations, *in* the city of Carterville, Missouri, without first having obtained a license therefor from said city, and the charge of such license shall be as follows:

"Vehicles (for each vehicle or wagon)
"Bakery wagon, $10.00 per annum."

It is true that the bread and other bakery products were made outside the city of Carterville by respondents. But it was sold within the city by means of wagons and drivers going about the streets delivering bread and taking orders, and the respondents were therefore "doing business in the town of Carterville" within the meaning of the terms of the ordinances. We do not understand that it is essential that respondents should actually reside within the city of Carterville and maintain a place of business therein and transact the affairs of life within the confines of the town in order to authorize this license tax upon their vehicles. We hold that when respondents undertook to sell their products in Carterville and compete with the local bakers by running bakery wagons, they subjected their wagons to the license tax in question. The case of Independence v. Cleveland, *supra,* relied upon by respondents, therefore, does not govern this case for reasons already stated. In that case, there was no authority whatever in the charter—express or implied—giving the city power to license the business itself, and to have allowed the city to license the agent would have been to impose upon the principal indirectly a burden which could not, under the terms of the charter, be imposed directly. That is not this case, as there was nothing in the charter to prevent the taxing of the bakery business, provided, of course, it was located in the city, while in the case of Independence v. Cleveland the business could not have been taxed even if located within the corporation.

The case at bar is more like that of Mason v. Mayor, etc., of the city of Cumberland (Md. 1901), 48 Atl. 136. The statute there gave the city the right "to license, tax and regulate wheeled vehicles." The ordinance provided, among other things, that it should be

unlawful for any person, company or corporation to
drive or use over the streets any milk wagon, etc., with-
out first having obtained a license.  Appellant lived out-
side the town of Cumberland where he kept his cows,
but sold milk in a wheeled vehicle about the streets of
the town.   It was held that the statute conferred the
general power to exact a license from appellant and
did not restrict this power in such manner as that it
should be confined to those who resided within the lim-
its of the corporation.  The court say: "No unjust or
unfair discrimination is made in exacting of all en-
joying the same privilege (in this instance the use of
the streets) that they should be subject alike to a reg-
ulation which imposes some burden connected with the
privilege.  .  .  .  (Quoting from the case of Tomlin-
son v. Indianapolis, 144 Ind. 142, 43 N. E. 9, 36 L. R.
A. 413.)  'The only contention, in truth, which can be
plausibly urged against the ordinance, is that it charges
those who drive upon the streets, but live outside the
city limits, the same license fees charged against those
residing in the city, and we do not think the ordinance
can for that reason be held invalid.'  The common coun-
cil, as we have seen, is given by the statute power to
pass ordinances to regulate the use of the streets and
alleys by vehicles.  This provision would, of itself, be
sufficient to sustain the ordinance.  The power to reg-
ulate implies the power to license and to exact a rea-
sonable fee for such license."

In the case of Memphis v. Battaile, 8 Heisk.
(Tenn.)  524, 24 Am. Rep. 285, the defendants operated
a rolling mill for the manufacture of bar iron near
Memphis, but outside the city limits.  They also lived
outside the city, and kept drays at the mill which were
used in the free delivery of their products to their cus-
tomers and merchants within the city and for the pur-
pose of picking up scrap iron about the city.  The char-
ter gave the city power "to license and regulate, drays,
carts, hackney-coaches, *and other vehicles* used in the

city." The ordinance provided, among other things, that every owner of a wagon or other vehicle kept or used for free delivery of goods to customers or others in the city should pay for each vehicle ten dollars per annum. It was held that the words "other vehicles" in the ordinances included the vehicle commonly called a "dray," though it was not specifically named. The court say: "It seems to us that the common sense of the proposition must be the law of it, and without further discussion, we hold that a dray, being a vehicle other than the vehicles named in the ordinances, is necessarily embraced within its provisions and meaning, and that there is nothing in the section in question, or in the phraseology of the other sections referred to, which forbids this reasonable and material construction of unambiguous words. But the defendants insist that they are not living within the corporate limits, and their drays and the animals that draw them are kept outside the city, except when plying their avocation within it, and, therefore, they are not liable. We cannot yield to this argument. The privilege is exercised within the city along its streets, and this is the daily business of the draymen and their drays. The privilege taxed is the use of the drays in the city, and it can certainly make no difference where the beneficiary resides."

We take it—and some of the cases herein cited are of this character—that a person may be conducting a business, trade or avocation, which does not require a license in itself, but yet in connection therewith, or incident thereto, he may be using a vehicle upon the streets of a city for which a license tax may be imposed. In the case of Joplin v. Lechie, 78 Mo. App. 8, it is held that unincorporated manufacturing institutions cannot be subjected to a license tax. Conceding that to be the law, and referring to the charter of cities of the third class, we find that "ice wagons" are in terms named as an object of such tax. Could it be said that

because *individuals* may be operating an ice plant
(which is a manufacturing institution,—Attorney General ex rel. v. Lorman, 59 Mich. 157) that the wagons
which would deliver the product of the factory could
not be required to pay for the use of the streets of a
city in which the wagons should operate?

In the case of St. Louis v. Green, 7 Mo. App. 468
(affirmed by the Supreme Court, 70 Mo. 562), the Court
of Appeals say: "That a municipal corporation may
have authority to tax vehicles belonging to the citizens
of the corporation, or to any person carrying on a business within its limits, in the sense that such a corporation may tax the use of the vehicle, has been repeatedly held."

In the case at bar, there is no effort to tax the
*business* of the respondents, but their vehicles only,
which, the evidence shows, and their petition admits,
were being used in the city of Carterville continuously
and not incidentally.

Our attention has been directed by respondents to
the case of St. Charles v. Nolle, 51 Mo. 122. There
is no essential analogy between that case and the present one and therefore the law of that case is not controlling in this. The ordinance of the city of St.
Charles undertook to tax occupations outside the city
for the benefit of those living within the city, and it
was held that its charter gave it no authority, express
or implied, to impose a license tax on wagons engaged
in hauling outside the city.

The ordinances of the city of Carterville make no
such provision, and the prosecutions sought to be restrained are not for carrying on a business and occupation inside the city. A license fee is not asked of them.
The license tax in this case was levied only on respondents' vehicles, which, they admit, were being constantly
used by them for regular business purposes in the city
of Carterville. The respondents have no just grounds
for complaint as they have paid nothing to improve the

streets and yet are using them day after day in their business the same as the residents. To relieve these respondents from the payment of the license tax in question would be to sanction an unjust discrimination against the resident citizens of Carterville and in favor of these non-resident competitors. The effect would be to give the non-residents the benefit of a constant use of the streets and all the advantages of the city trade and at the same time relieve them entirely of the burden of city taxation which its own citizens are compelled to bear to maintain the streets and support the city government of which the respondents are beneficiaries.

It is ordered that the judgment be reversed and the cause remanded, and the circuit court is directed to dissolve the injunction and dismiss the respondents' bill at their costs. *Cox, J.,* concurs. *Gray, J.,* not sitting.