## CITY OF CARTERVILLE, Appellant, v. ROBERT BLYSTONE, Respondent.

**Springfield Court of Appeals, December 4, 1911.**

1. **MUNICIPAL CORPORATIONS: Use of Streets: License Tax: Dray Wagons: Habitually Hauling Goods in and out of City.** Defendant, a driver, was prosecuted under a city ordinance for the unlawful use of the streets of the city of Carterville (a city of the fourth class), in carrying on a dray and transfer business with a two-horse dray wagon on behalf of the Joplin Transfer & Storage Company, without the defendant or the transfer company having first obtained a license therefor. Under the agreed statement of facts it appeared that the transfer company, with offices and place of business in the city of Joplin, held itself out to the public within a certain trade area, in which the city of Joplin and city of Carterville were located, as conducting a transfer business, hauling and transferring property for hire from points outside of the city of Carterville to points within the city and from points within the city to points outside the city and that it repeatedly and habitually and as a business sent its two-horse wagons into the city of Carterville, hauling goods in and out of said city; but that it refused all requests to haul goods from one point within said city to any other point therein. *Held,* that the city of Carterville had a right to exact a license tax of defendant for the use of its streets in carrying on such transfer business. (St. Charles v. Nolle, 51 Mo. 122, distinguished.)

2. ———: ———: ———: ———: **Occasional Use of Streets by Non-Resident Drayman.** A city of the fourth class has no right to levy or collect a license tax on a non-resident drayman, who may occasionally pass through such city with his vehicle, and who may occasionally haul goods into such city and deliver them therein. (Separate concurring opinion of GRAY, J.).

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

REVERSED AND REMANDED.

*A. M. Baird, S. W. Bates* and *W. R. Robertson* for appellant.

(1) The city may levy three taxes under its charter powers: first, a tax on property; second, a vehicle tax for the use of the streets; third, a tax on the business or occupation. St. Louis v. Weitzel, 130 Mo. 619; Harder's Co. v. Chicago, 85 N. E. 245. (2) The license sought to be imposed in this case is based solely on the principle that those who, in the course of their business, wear the streets shall contribute to their maintenance, being of the same nature as tolls charged by private corporations for the use of ther turnpikes and such charges are commendable and just. Wonner v. Carterville, 142 Mo. App. 120; Gartside v. East St. Louis, 43 Ill. 47; St. Louis v. Green, 7 Mo. App. 468, 70 Mo. 562; St. Louis v. Weitzel, 130 Mo. 619; Kansas City v. Richardson, 90 Mo. App. 450; Kansas City v. Sith, 93 Mo. App. 217; Tomlinson v. Indianapolis, 43 N. E. 9; Harders' Co. v. Chicago, 85 N. E. 255; Terre Haute v. Kersy, 64 N. E. 472; Lancaster v. Biggs, 118 Mo. App. 574; Ft. Smith v. Scruggs, 58 L. R. A. 923; Brown v. Mobile, 25 So. 225. (3) The fee required by the ordinance in this case, being based upon the principle that it is a toll for the use of the streets, is separate and distinct from the business or occupation in which the wagon may be engaged and it makes no difference that the owner of the wagon is a nonresident or the business with which it is connected, together with the wagon, may be kept and maintained outside the city limits, while not used upon the streets of said city. Wonner v. Carterville, 142 Mo. App. 120; Mason v. Cumberland, 48 Atl. 136; Memphis v. Battaile, 24 Am. Rep. (Tenn.) 285; Frommer v. Richmond, 31 Am. Rep. 746. (4) It is unimportant that the principle portion of the business of the com-

pany owning the wagon may be conducted outside of
the city limits of Carterville, provided the wagon is
used upon the streets of the city in the regular course
of business of respondent, such city being within the
immediate trade area and district of the respondent.
Sacramento v. Stage Co., 12 Cal. 134; Deere Plow Co.
v. Wyland, 76 Pac. 863; State v. Bank, 54 Am. St. Rep.
141.

*Grover C. James* for respondent.

NIXON, P. J.—The defendant was tried in the
police court of the city of Carterville upon the follow-
ing complaint: (Formal parts omitted.)

"Comes now A. M. Baird, city attorney within
and for the city of Carterville, and informs the court,
complains of and charges the facts to be: That one
Robert Blystone, defendant, on the 5th day of Octo-
ber, 1910, within the corporate limits of the city of
Carterville, Missouri, did then and there unlawfully
use and operate upon the streets of said city a vehi-
cle, to-wit, a two-horse wagon commonly known as a
dray and transfer wagon, for the purpose of trade,
traffic and commerce, to-wit, the carrying on of the
dray and transfer business for and on behalf of the
Joplin Transfer and Storage Company, a corporation
duly organized under the laws of the State of Mis-
souri and doing business in said Jasper county, with-
out the said Robert Blystone or the said Joplin Trans-
fer and Storage Company having first had and ob-
tained a license therefor from the said city of Car-
terville, Missouri; against the peace and dignity of
and city of Carterville, and in violation of sections
2, 4, 5, 7 and 8 of Ordinance Number 129 of said city,
which said ordinances was passed and approved on
the 16th day of June, 1910.

"Wherefore, plaintiff prays judgment against the said defendant in the sum of one hundred dollars and for costs of the case, and that said defendant stand committed until all fines and costs be paid."

The ordinance which defendant was charged to have violated, so far as necessary to understand the questions involved in this case, is as follows:

"Sec. 2. There is hereby levied and fixed a license tax upon the various objects, subjects, vocations, occupations and trades hereinafter in this ordinance mentioned, within the city of Carterville, Missouri, and the same shall be licensed, taxed and regulated as hereinafter provided.

"Sec. 3. It shall be unlawful for any person, firm or corporation to exercise, carry on or engage in any of the following business, trades, vocations, or occupations, in the city of Carterville, Missouri, without first having obtained a license therefor from the said city, and the charge for such license shall be as follows:

"Sec. 4. For each vehicle or wagon used or operated upon the streets of the city of Carterville, Missouri, for the purpose of trade, traffic or commerce, as follows: Each one-horse wagon, $7.50 per annum. Each two-horse wagon, $10 per annum. . . .

"Sec. 5. It shall be unlawful for any person, firm or corporation to operate or use, directly or indirectly, upon the streets of the city of Carterville, Missouri, any vehicle or wagon upon which said vehicle or wagon there is by the terms of this ordinance a license tax levied and fixed, without first having had and obtained a license therefor, and any person, firm or corporation so doing, or assisting directly or indirectly in so doing in any manner either as owner, proprietor, or as officer, manager, superintendent, agent, servant or employee, shall be guilty of a misdemeanor and of a separate and distinct offense and misdemeanor under the provisions hereof for each period of twenty-four hours in which such vehicle or wagon is so used, or operated,

and shall be proceeded against as in case of other misdemeanors within the meaning of this evidence, and upon conviction thereof shall be fined for each misdemeanor or offense in any sum not less than five dollars nor more than one hundred dollars."

This case was tried upon an agreed statement of facts from which it appears that the Joplin Transfer and Storage Company was engaged in the transfer and storage business, having its office in the city of Joplin where it kept its teams, wagons, equipment and drivers; that the said city of Joplin is about seven miles distant from the city of Carterville, and that the city of Webb City is situated between the two said cities, and that all three of said cities together, with the thickly populated portions of Jasper county lying adjacent to said cities, comprise one trade area and district from which the said Joplin Transfer and Storage Company obtained its transfer and storage business; that the defendant was employed by said company as a driver of one of its dray wagons used by the company for the transfer of goods for hire; that the company held itself out to the public in the cities of Joplin, Webb City and Carterville, as conducting a transfer business, hauling and transferring property for hire from points outside of the city of Carterville to points within the city, and from points within the city to points outside of the city; that the company received orders in the course of its business for the moving of property from points within the city of Carterville to points outside, and that it did repeatedly and habitually and as a business send its two-horse wagons and vehicles into the city of Carterville upon the streets and public highways of said city for the purpose of hauling and transferring articles that persons desired to have transferred, but that said company would not accept for transportation articles to be hauled from a point within said city to any other point within said city, and all requests for the hauling

of goods from a point within said city to any other point within said city were by said defendant and said company declined.

The sole question involved is as to the right of the plaintiff city to exact a license tax of defendant for the use of its streets by defendant in carrying on the transfer business in the manner indicated. Of course, this case is to be decided on its own basis of facts and does not require the consideration of cases where the ultimate facts involved were dissimilar to those presented in this record.

The questions involved in this appeal are closely analogous to those passed upon by this court in the case of Wonner et al. v. City of Carterville, 142 Mo. App. 120, 125 S. W. 861. An ordinance of the city of Carterville, very similar to the ordinance in question in the present case, was under consideration. The respondents in that case challenged the authority of the city under its charter to levy a tax on their wagons, and it was said in that opinion the statute (sec. 5979, R. S. 1909) provides that that "cities of the fourth class (of which the city of Carterville is one) shall have and exercise exclusive control over all streets, alleys, avenues and public highways within the city limits of such city," and that section 5978, Revised Statutes 1909, provides that "the mayor and board of aldermen shall have power and authority to regulate and to license, and to levy and collect a license tax on . . . merchants of all kinds, grocers, . . . butchers, . . . hackney-carriages, omnibuses, carts, drays, transfer and job wagons, ice wagons, and all other vehicles . . . and all other businesses, trades and avocations whatever."

The controversy is that case arose over bakers' wagons. The wagons sought to be charged with a license tax, as well as the horses, and entire outfit, were from Joplin and Webb City, and belonged to persons who resided outside the limits of the city of

Carterville. The wagons were loaded with bakery products outside the city and carried and delivered to customers within the city of Carterville, and it was held that under such circumstances, as the wagons were being run in the city of Carterville for the purpose of carrying on the business of the respondents within said city, the respondents were liable for the license tax no matter where they may have resided, and that the running of the wagons under the circumstances was within the scope and purview of the ordinances of such city. In that case, however, the evidence showed that the bakers' wagons made regular trips from the bakeries in Joplin and Webb City loaded with bakery products which were sold from the wagons to customers and dealers by traveling from house to house selling and taking orders. Some point is made on this appeal that the Wonner case has no application because under the evidence in that case the trips were regularly made and the wagons regularly traveled from house to house in the transaction of their business. We think this is a mere detail or incident which was stated in the opinion because the facts authorized it in that case, but the controlling principle of that case is identical with the principle involved in this case is that the use of the streets by the wagons for hire gave the right to impose the vehicle tax.

In this case the respondent does not contend that the ordinance passed by the city of Carterville is not a valid ordinance, but the contention is that respondent was not violating that ordinance when he was not engaged in a regular business which took him upon the streets of the city of Carterville, but that he is exempt from such taxation—only hauling for parties occasionally from points without to points within the city and vice versa, and that as to such hauling the city had no right to tax. To sustain this contention respondent has called attention to the case of St. Charles v. Nolle, 51 Mo. 122, as containing the princi-

ples which he claims are decisive of this case. In the Wonner case we disposed of the Nolle case as follows: "Our attention has been directed by respondents to the case of St. Charles v. Nolle, 51 Mo. 122. There is no essential analogy between that case and the present one and therefore the law of that case is not controlling in this. The ordinances of the city of St. Charles undertook to tax occupations outside the city for the benefit of those living within the city, and it was held that its charter gave it no authority, express or implied, to impose a license tax on wagons engaged in hauling outside the city." The importance which respondent has attached to that case justifies at our hands its further consideration. The agreed statement of facts upon which the Nolle case was tried, as stated in the opinion in that case, was as follows: "Nolle, the defendant, was hauling lumber for Hallrah & Macheus from Judges Landing on the Mississippi river about seven miles below the city of St. Charles, to their lumber yards in the city of St. Charles, without first having taken out a license . . . as a drayman or wagoner. Nolle is a farmer and nonresident of the city, living about five miles below the city in the neighborhood of said land. He does not make hauling for hire his regular business, but did the hauling in this instance for compensation." The ordinance of the city of St. Charles was to the effect, "that every owner or driver of any dray, cart or wagon used or kept to carry or convey goods, wares or merchandise or any species of property or thing for hire, *from one part of the city to another part, or from places within the city to places without the city, or from places without the city to places within the city* shall register and number the same with the city register, give bonds," etc. The charter of the city of St. Charles provided that "the mayor and councilmen shall have power by ordinance, to provide for licensing, taxing and regulating hacks, drays, wagons and

other vehicles used within the city for pay." It will therefore be seen that to violate the ordinance of the city of St. Charles, by its very terms, it was necessary that the unlicensed vehicle should be engaged in the business of hauling outside as well as inside the city limits or from the inside to the outside, and the palpable physical fact is that a person could not haul from the outside to the inside or from the inside to the outside of the city without hauling *on the outside of the city* and the tax was imposed by its express terms on the business of hauling outside as well as inside the city. The court held under this state of facts that there was no authority, expressed or implied, in the charter of the city of St. Charles, authorizing the imposition of a license tax on wagons engaged in hauling outside the city, and, as the ordinance levying such tax was not authorized by its charter, it was null and void, and that to tax occupations outside the city for the benefit of those living in the city is in effect taking property of citizens for private use; that the city could only pass such ordinances as were warranted by its charter, and there was no authority, expressed or implied, in the charter of the city of St. Charles to authorize the imposition of a license tax on wagons hauling outside the city.

In contradistinction to the ordinance of the city of St. Charles, the ordinance of the city of Carterville was a tax levied for the use of its streets and such tax was levied irrespective of the terminal points of the hauling, and while the owner of the unlicensed vehicle might use it for hauling from a point outside to a point inside the city, or from a point inside to a point outside the city, this was optional as his business interests might dictate. The tax was not levied because of such a haul, and because the vehicle was used outside the city was no reason why the tax should not be paid for the use of the streets inside the city. The license tax in the case of the city of Carterville,

as we have seen, was levied exclusively on vehicles engaged in traffic on the streets of the city and not on business done outside, and it was strictly a vehicle tax for the use of the city's streets.

On broad principles of equity, the respondent has no just grounds of complaint. He had the benefit of the police protection given him by the city government, and paid nothing to improve the streets, and yet was using them from day to day as his business required for profit in his business the same as the residents. To relieve the respondent under these circumstances from the payment of the license tax in question would be to sanction an unjust discrimination against the residents of the city of Carterville and in favor of the respondent who has the use of its streets. The effect would be to give the nonresidents the benefit of a constant use of the streets as their business might require and all the advantages of the city trade and at the same time relieve them entirely of city taxation which its own citizens are compelled to bear to maintain the streets and support the city government of which the respondent was beneficiary.

It is therefore ordered that the judgment be reversed and the cause remanded. *Cox, J.,* concurs. *Gray, J.,* concurs in separate opinion.

## CONCURRING OPINION.

GRAY, J. (concurring). I fully concur in all that Judge Nixon has said in the foregoing opinion, and it is not my purpose herein to again discuss the general principles covered by him. In my judgment the case involves questions of far-reaching importance, and unless the facts of the case are thoroughly understood, the opinion is likely to be cited in support of a proposition that it does not and is not intended to sustain. And I believe there has been a general misunderstanding of what was really decided by the Supreme Court

in the St. Charles case, 51 Mo. 122, and that it has been generally conceded that the supreme court in that case declared that a municipality of this state has no authority to levy a license tax upon vehicles engaged in hauling from points without the city to points within the city, and vice versa. But I believe, however, Judge NIXON has correctly construed that opinion, and that it is not an authority for the doctrine that under no circumstances has a city the right to levy a license tax on a vehicle owned by a nonresident and used for the purpose of hauling into and out of the city.

This case was tried upon an agreed statement of facts, from which it appears that the Joplin Transfer & Storage Company was engaged in the transfer and storage business, having its office in the city of Joplin where it kept its teams, wagons and equipment; that the defendant was employed by said company as a driver of one of its dray wagons used by the company for the transfer of goods for hire; that the company held itself out to the public in the cities of Joplin, Webb City and Carterville, as conducting a transfer business, hauling and transferring property for hire from points outside of the city of Carterville to points within the city, and from points within the city to points outside of the city; that the company received orders in the course of its business for the moving of property from points within the city of Carterville to points outside, and that it did repeatedly and habitually and as a business, send its two-horse wagons and vehicles into the city of Carterville, upon the streets and public highways of said city, for the purpose of hauling and transferring property.

It is solely on account of the nature of the business actually transacted by the transfer company in the city of Carterville, that I believe it is subject to the license tax imposed. I do not attach special importance to the fact that the resident owner is taxed to keep up the streets, and therefore, it is not right to

give the nonresident the free use of the same. It is the duty of each municipality to keep its own streets in repair. It is most likely that the nonresident owner of the vehicle has been taxed in the city of his residence to keep its streets in repair, so that persons without the city and coming therein for business or pleasure can pass over the same with reasonable safety. In other words, the owner of a vehicle in Carterville, who pays a license tax to keep that city's streets in repair, does so, not for his own use exclusively, but for the public generally, including residents and nonresidents of the city, and what he gives to make the streets convenient for the use of a resident of Joplin, is reciprocated by his right to the free use of the streets of Joplin, as occasion may require.

There is nothing in the opinion of Judge NIXON, as I construe it, holding that a fourth-class city has the right to levy a license tax on all vehicles that may pass over its streets. And I do not believe that a liveryman or drayman can be required to pay a license tax in each city to which he may send his vehicles on business, and therefore, I do not believe a city governed by the laws of this state relating to cities of the fourth class, has any right to levy or collect a license tax on a nonresident drayman who may occasionally pass through such city with his vehicles, or who may occasionally haul goods into the city and deliver them therein.

I think the law on this question was correctly declared in White Oak Coal Co. v. Manchester (Va.), 64 S. E. 944; Dooley v. Bristol, 46 S. E. 296, and Plymouth v. Cooper, 135 N. C. 1, 47 S. E. 129.

In the White Oak Coal Company case, the city attempted to levy a license tax upon the vehicles of the coal company located in another city, but which had come to the first named city for the sole purpose of unloading a consignment of coal and delivering it to a party outside of the city limits. In declaring the

defendant was not subject to the license, the court said: ''To levy such a tax on vehicles of nonresidents whose business or pleasure casually carries them into or through the city would be in derogation of their reserved right to use the highways of the commonwealth, and impose intolerable conditions upon the public, and lead to absurd results.''

In Plymouth v. Cooper, supra, a liveryman of another town under contract went to the licensing city for the purpose of meeting a person and conveying him to another city. The court held he was not subject to the tax and said: ''Surely, the legislature never intended any such result, nor should the courts place such a construction upon the law as to legalize such action. It would require a liveryman who had paid all the taxes at his home to pay an additional tax in every town to which he happened to send a vehicle, even if only once a year.''

In the recent case of Pegg v. Columbus, 89 N. E. 14, 23 L. R. A. N. S. 453, the Supreme Court of Ohio passed upon the right of the city of Columbus to exact a license tax from farmers, each of whom owned a two-horse farm wagon, drawn by two horses, and which was occasionally driven into said city for the purpose of delivering farm products of their own raising, and for the purpose of transporting merchandise to their homes, and which they had purchased in said city for their family use. The ordinance required a tax for all vehicles used upon the streets of the city. In holding that the city did not have the right to collect the license tax, the court said: ''If the city of Columbus may enforce such ordinance against nonresidents, so may any other municipal corporation, of which there are several within Franklin county, and, if such measures should be adopted by them or some of them, a former whose way to Columbus lies through such town or city would be required to pay further tribute to repair streets. And, as it is found that farmers and garden-

ers living in counties adjoining Franklin county haul the farm and garden products to Columbus, each municipality through which such farmer would pass could demand the payment of a license fee for the use of the streets until license would become prohibition. What Columbus can legally do in this respect any other Ohio municipal corporation can do—demand an entrance fee as a condition to the use of the public highway. If such farmer uses one of the vehicles named to pass through Columbus and Franklin county on a mission of business or pleasure, even occasionally or once in a year, he is required to obtain the license."

In Bennett v. Birmingham, 31 Pa. 15, the court expressly held that the city was not authorized to impose a tax on drays and wagons owned by nonresidents of Birmingham, and used in carrying goods and products through the borough from an adjoining township to Pittsburg.

I am further of the opinion that the law was correctly declared by this court in Wonner v. City of Carterville, 142 Mo. App. 120, 125 S. W. 861, and by other courts in the following cases: Tomlinson v. Indianapolis, 144 Ind. 142, 36 L. R. A. 413, 43 N. E. 9; Mason v. Mayor of Cumberland, 48 Atl. 136; Gartside v. East St. Louis, 43 Ill. 47; Edenton v. Capeheart, 71 N. C. 156; Gibson v. Coraopolis, 27 Pitts., L. J. N. 7; Memphis v. Battaile, 24 A. R. 285; Western Union Telegraph Co. v. City of Freemont, 58 N. W. 415.

In the City of Memphis v. Battaile, supra, the defendants owned a rolling mill situated outside of the city, and they used their teams in hauling the products of their mill to their customers in the city, and for the purpose of hauling scrap iron they purchased from persons in the city to their mill. In upholding the right of the city of Memphis to require them to pay the license tax the court said: "But the defendant insist they are not living within the city limits, and their drays and the animals that draw them are kept out-

side the city, except when applying their avocations; and, therefore, they are not liable. We cannot yield to this argument. The privilege is exercised within the city and along its streets, and this is the daily business of the draymen and their drays. The privilege taxed is the use of the drays in the city, and it can certainly make no dicerence where the beneficiary resides."

If the testimony in this case disclosed nothing more than the facts that the transfer company had an office in Joplin, and that its teams and equipment were kept there also, and that occasionally it was employed to haul goods which required its teams to enter upon the streets of Carterville, I do not believe it could be required by Carterville to pay a license tax on the vehicle thus using the streets. But the record in this case discloses that the city of Joplin is but a few miles distant from the city of Carterville, and that said cities, together with the city of Webb City, which lies between Joplin and Carterville, comprise one trade area and district from which the company obtained its transfer business, and in which it held itself out to the public as being engaged in such transfer business, and ready to serve all who required its services. Under these circumstances it appears to me that the transfer company was engaged in the transfer business in Carterville, and, therefore, that city has the right to require the company to pay a license tax on its vehicles used in conducting its business in the city.