CITY OF ST. CLAIR, MISSOURI, A MUNICIPAL CORPORATION, RESPONDENT, v. CLARENCE GEORGE, APPELLANT.—33 S. W. (2d) 1019.

St. Louis Court of Appeals. Opinion filed January 6, 1931.

*Jones, Hocker, Sullivan & Angert* and *Jesse M. Owen* for appellant.

*A. A. Tibbe* for respondent.

SUTTON, C.—This is an action commenced in the police court of the city of St. Clair, to recover of defendant a fine, for the violation of an ordinance of said city. The complaint charges that defendant, on August 14, 1929, unlawfully operated upon the streets of said city ' one motor truck, 'for the purpose of carrying on a hauling, drayage and transfer business, for and on behalf of Schwartzmann Service, Inc., without first having obtained a license therefor. From the police court the cause went on appeal to the circuit court, where it was tried on the following agreed statement of facts:

"On August 14, 1929, plaintiff was a city of the fourth class, located in Franklin county, Missouri. Defendant was on said date employed by Schwartzmann Service, Inc., as a driver of a large truck being used by said Schwartzmann ' Service, Inc., in transporting merchandise of the Kroger Grocery Company from St. Louis, Missouri, to a Kroger store in St. Clair, Missouri, for hire, and on said date drove said truck into the city of St. Clair to the Kroger store in said city. On said August 14, 1929, neither Schwartzmann Service, Inc., nor defendant held a drayman's (or drayage) license from the plaintiff. At no time did Schwartzmann Service, Inc., nor defendant do any local freight hauling within the city of St. Clair, but only hauled freight under its contract with Kroger Grocery Company to and from the Kroger store in St. Clair, Missouri, making trips probably two or three times a week. Neither defendant nor his employer, Schwartzmann Service, Inc., have ever been residents of St. Clair, but at all times have resided in St. Louis, Missouri."

The act of the legislature relative to motor vehicles (Sec. 24, p. 100, Extra Session Laws, 1921) provides "that municipalities may impose occupation taxes on the business of transporting passengers, freight and merchandise for hire carried on within their limits, and may measure such taxes by the number of motor vehicles engaged in such transportation."

Upon the trial in the circuit court, without a jury, there was a judgment in favor of plaintiff and against defendant, for the recovery of a fine of $25, and from this judgment defendant appeals.

Defendant contends here that the city of St. Clair is without authority to require and enforce a license tax on a truck driven by defendant for his employer, Schwartzmann Service, Inc., and used solely in transporting merchandise for the Kroger Grocery Company from St. Louis to a Kroger store in St. Clair, and from said store to the city of St. Louis, both defendant and his employer, Schwartzmann Service, Inc., being non-residents of the city of St. Clair, and residents of the city of St. Louis.

In The City of St. Charles v. Nolle, 51 Mo. 122, where the defendant, who was a non-resident of the city of St. Charles, living about five miles from said city, in the neighborhood of Judges Landing, on the Mississippi River, which was located about seven miles from said city, was hauling lumber from said Judges Landing into said city, for a lumber firm, delivering the lumber to their lumber yard in said city, for hire, without having taken out a license as a drayman or wagoner, and an ordinance of the city provided that ''every owner or driver of any dray, cart or wagon used or kept to carry or convey goods, wares or merchandise or any species of property or thing, for hire, from one part of the city to another part, or from places within the city to places without the city, or from places without the city to places within the city,'' should take out a license therefor, and the charter of the city provided that the mayor and councilmen should have power by ordinance, ''to provide for licensing, taxing and regulating hacks, drays, wagons and other vehicles used within the city for pay,'' the court, speaking through Judge ADAMS, said:

''A city can only pass such ordinances as are warranted by its charter. There seems to be no authority, express or implied, in the charter of the city of St. Charles to authorize the imposition of a tax license on wagons engaged in hauling outside of the city.

''It was not contemplated by the Legislature that the free ingress, egress and regress of outside citizens should be impeded by taxation, to be imposed by the city. It cannot be found in that part of the charter allowing tax license to be imposed on wagons, etc., used for pay in the city. The language used excludes such interpretation— 'expressio unius exclusio alterius.' . . .

''Besides, if the Legislature had given the power in so many words, in my judgment, such legislation would have been void as going beyond the limitation of legislative power. . . .

''So much of the ordinance under consideration, as attempted to impose a tax upon wagons hauling into and out of the city, we think was void as not being authorized by the charter, and in my opinion the Legislature could give no authority to pass such an ordinance.''

A like doctrine is announced in other jurisdictions. [Commonwealth v. Stodder (Mass.), 2 Cushing 679; East St. Louis v. Bux, 43 Ill. App. 276; Bennett v. Birmingham, 31 Pa. 15; Gunn v. Macon, 84 Ga. 365; Cary v. North Plainfield, 49 N. J. L. 110.]

In the Stodder case the court said:

"Without calling in question the power of the mayor and aldermen to establish by-laws forbidding the exercise of certain employments, without a license from them, by persons inhabitants of Boston, and whose business is local, and to be carried on in Boston, such by-laws to be always reasonable in their character, and such as impose no unreasonable restraints upon business or trade, but such as are required for the public health or public safety; we have more particularly considered the question of the authority of the mayor and aldermen of the city of Boston to enact an ordinance forbidding persons, inhabitants of other towns and residing elsewhere, from setting up stage-coaches and omnibuses for the conveyance of passengers for hire from such other towns to Boston, or from Boston to other parts of the commonwealth, without a license from the mayor and aldermen of Boston. The power claimed here, if really understood by the city government to the extent embraced by the terms of the ordinance, would be the power to control every stage-coach and vehicle used for carrying people for hire, though commencing its route at the most extreme limits of the commonwealth, and terminating its route in the city of Boston. Its purpose was probably much more limited and had particular reference to the numerous lines of omnibuses running from the adjacent towns into the city of Boston. This mode of conveyance is only the conveying by stage-coaches in an improved and more convenient vehicle. It is a system of great public convenience, furnishing facilities for passing from the adjacent cities and towns, and ought not to be unnecessarily interfered with by the city authorities of Boston. The much greater part of the whole route traveled may, and in some cases does, lie without the limits of the city of Boston.

"Considering the case to be that of an inhabitant of Roxbury, setting up his carriage in Roxbury and using it for the purpose of conveying persons from Roxbury to the city of Boston, and from Boston to Roxbury, we deem the employment one not within the authority and control of the mayor and aldermen, to any such extent as to authorize them to require a license before exercising the employment of proprietor of such omnibus, for the conveyance of passengers to and from the central part of the city of Boston. We do not mean to be understood that no by-law can properly be made extending to inhabitants of other towns coming within the limits, and in reference to acts within the city. Corporations, having a territorial jurisdiction, have, to some extent, the power to make by-laws affecting all persons who come within their territorial limits.

34

It was so held in the case of Vandine, Petitioner, 6 Pick. 187 (17 Am. Dec. 351), and in Nightingale's case, 11 Id. 168, already cited, but the acts there forbidden had exclusive reference to acts affecting the city. The city government forbade all persons, except such as were duly licensed therefor, to remove offal and dirt from the city, and this by-law was held a valid by-law, as respects strangers coming into the city, and there doing the acts forbidden by the ordinance. So also as to sales of certain articles in certain streets near the Faneuil Hall market.

"The case before us is of a different character. The business of carrying persons for hire from town to town, in stage-coaches and omnibuses, is not so far a territorial occupation or employment, as will authorize the city government of Boston to require a license from the mayor and aldermen of Boston, before exercising that employment. A by-law, to that effect, is an unnecessary restraint upon the business of those carrying passengers for hire, and not binding upon inhabitants of other towns. For this reason the by-law must be held invalid as respects the defendant."

The cases of Wonner v. City of Carterville, 142 Mo. App. 120, 125 S. W. 861, and City of Carterville v. Blystone (Mo. App.), 141 S. W. 701, which have been called to our attention, were decided on facts so different from the facts of the present case that they cannot be regarded as analogous cases.

Some question has been made as to the proper interpretation of the Nolle case, but we do not see how the plain language employed can be misunderstood. The court clearly holds that the city of St. Charles had no power to impose a license tax upon the wagons of an outside resident, engaged in the business of hauling into and out of the city, and that the Legislature could confer upon the city no such power. The court manifestly places its holding on the ground that an outside resident, so engaged in the business of hauling, was in legal contemplation engaged in such business outside and not within the city.

We conclude that defendant in the present case was not carrying on the business of transporting merchandise within the limits of the city of St. Clair, and was not subject to the imposition of a license tax by said city.

The judgment of the circuit court should be reversed and the defendant discharged. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the defendant discharged. Haid, P. J., and Becker and Nipper, JJ., concur.